GEORGE W. LAWRENCE, in equity, *vs.* EMERSON ROKES and others.

*Equity. Partnership accounts. Limitations, statute of. Account. Demand.*

Where, in a bill in equity against several defendants, all of whom appear, and all but one allow the bill to be taken *pro confesso*, the existence of a common interest in property, and the transaction of a joint business is admitted, and the complainant (a partner), applies for an adjustment of the accounts respecting it, the court will not accept a general denial of indebtment on the part of the respondent, however positive, and dismiss the bill, without reference to a master for an investigation of accounts, notwithstanding such denial may be accompanied with a statement of circumstances rendering it probable that, as to such respondent, the denial may prove well founded; especially, when the respondent does not assert his full knowledge of all the details of the accounts. The master to whom the case is referred may receive proof that the partnership transactions extended over a longer period of time than that specified in the answer.

While the court, in equity, will ordinarily give full effect to the statutes of limitation, in so doing it acts in obedience to the spirit of those statutes, and "rather upon the reason and principles on which, as positive rules, they are founded, than the rules themselves;" so that, if, by the laches of the complainant, the respondents have lost their evidence, or are placed in a disadvantageous position, the court will deal with the remedy as if barred in equity, even although the full term of the statute of limitations may not have elapsed; and, on the other hand, where there has been no change in the condition and position of the parties, and peculiar circumstances appear to justify the delay, appropriate relief will not be refused, although a strict application of limitation rules might seem to require it; certainly not where the respondent admits the reception of firm assets within six years.

To operate as a bar, the benefit of the statute must be expressly claimed in the answer.

Whether actions of account at law, and the analogous remedy by bill in equity are now subject to any other than the general limitations of twenty years, *quære?*

The making, or omission to make, a demand before filing the bill, only affects the question of costs; especially where the answer shows such a difference between the parties as to indicate that a demand would be a mere fruitless formality.

BILL IN EQUITY to obtain an adjustment of partnership accounts. First heard on demurrer; see 53 Maine, 110. Subsequently all the defendants appeared, and all but Rokes allowed the bill to be taken *pro confesso.* He filed his answer, and the cause was heard

on bill, answer, and replication. The facts are stated in the opinion.

*Wm. L. Putnam*, complainant's solicitor.

*A. P. Gould*, solicitor for respondent, Rokes.

*W. H. Fessenden*, for the other respondents, submitted to the bill, filing no answer.

BARROWS, J. The complainant's bill in equity, commenced Feb. 5, 1864, alleges that he, with Emerson Rokes, of Rockland, in this State, Alexander Libbey, 2d, of the State of Virginia, Sanford Williams, of Boston, Massachusetts, and Bradford Oliver, of the State of New Jersey, in 1856, commenced the business of purchasing and cutting timber and lumber in Virginia, and shipping the same to market and disposing of it upon joint account, which business they continued until the fall of 1858, shipping and selling large quantities of timber and lumber, in which and the proceeds thereof they had an interest in common, each one-fifth ; that in the prosecution of the business large liabilities were incurred upon joint account, and that this complainant, at the request of the respondents, and in their behalf as well as his own, has assumed and paid more than his fair proportion of these liabilities, while each of the respondents has received more than his due share of the proceeds of the joint property, so that each is thus indebted to him in a considerable sum ; that he has frequently requested the respondents to come to a settlement of all the matters appertaining to the premises with him, and that they neglect and refuse so to do. Wherefore, he prays that they may be required to render a full and fair account, and pay such sums as may be found due from them respectively to the complainant, he offering to pay on his part whatever may be found due from him to them, or any of them.

Since the case was up before, upon a demurrer for alleged want of parties, which was overruled (53 Maine, 110), the respondents who were out of this State have all appeared, submitted to the jurisdiction, and allowed the bill to be taken *pro confesso* as to

them. Rokes, who then demurred, on account of the absence and non-joinder of his co-respondents, files an answer, which, if taken to be true (as it must be in the absence of any evidence to control it as to all matters where it is responsive and consistent) would seem to bring the case within the rule there laid down (p. 113) requiring all the parties interested to be before the court; but as all the respondents have now appeared, and become parties, that matter is altogether immaterial, and the question is, whether, upon the facts as stated in the answer, the bill can still be maintained, and the accounts investigated by a master in chancery, or whether the bill should now be dismissed.

And we are of opinion that there is nothing asserted in the answer which requires that the bill should be summarily dismissed without the investigation which the complainant claims.

The answer admits the transaction of a large co-partnership business by the parties, and that there has never been any adjustment among them; that there were large disbursements and receipts for the common benefit; and it appears by a comparison of the bill and the answer of Rokes, that he and the complainant differ so radically as to the actual state of the accounts, that there would seem to be no rational probability of a settlement except by the intervention of compulsory process. The respondent asserts in his answer, that " the last of said timber was shipped from Virginia to the New England States in the fall of 1857, since which time the business of cutting and selling timber by the said joint parties has ceased;" that " said business was conducted under the firm name of Lawrence, Oliver & Co.;" that no cash capital was furnished or put in by either of the parties; and that the only capital or property with which the business was commenced, consisted of certain lots of standing timber, mules, harnesses, wagons, chains, and other apparatus serviceable in the business about to be undertaken. And of this the defendant says what he furnished was of the value at least of $2500, and that which the complainant furnished, " according to the recollection and belief of this defendant," was of the value of about $1000. Rokes further asserts that he advarced in the

prosecution of the enterprise, the further sum of $2,118.65, and contributed his personal services to said firm for one year; that he received from a person to whom some of the timber was sold by Lawrence, Oliver & Co., $161, in September, 1858, and that he had of them in October, 1857, teams, wagons, and timber, for which he agreed to give them $1,710, and that this is all he ever received from the common stock, leaving, as this respondent claims, a balance due to him from the firm, of $2,747.65, besides interest; that they cut and forwarded a great quantity of timber during the season of 1856–7, which was sold by the complainant, as agent for the firm, and the pay therefor received by him to an amount exceeding the cost of production and transportation, " as this defendant is informed and believes,"—but to what precise amount he does not know, though he has repeatedly requested the complainant to inform him—that he has no knowledge of the advancement of moneys, or the payment of debts for the firm by complainant except from the allegations in the bill, and he therefore prays that complainant may be held to proof of the same, and he explicitly denies that any sum can be due from him to the complainant on that account, and asserts upon information and belief, that on the contrary, upon a full and fair adjustment, the complainant would be found indebted to him, but in what amount he cannot say, because he says complainant has the accounts and vouchers relating to the sales of timber, and other property, and the disbursements made by him, if any, in his own possession. He further asserts upon information and belief, that there are still due from the firm, debts to the amount of from $1500 to $2000, and asserts that the property of the firm was all disposed of by common consent in 1857, and that since that time no person has had authority to contract debts upon joint account. And he denies that the complainant has ever requested him to come to a settlement "when he, the said Lawrence, was willing and ready to make such settlement," or that he himself has ever refused to make a settlement, averring that he " has always been willing and ready to make a full and fair settlement of all the transactions and affairs of said company," one of

which he says was the sale and delivery of part of a ship's frame to Lawrence, Williams, and Oliver, which he is informed and believes was never paid for, although it was the duty of the complainant, as agent for Lawrence, Oliver & Company, to collect the pay for it, or pay it himself as one of the purchasers.

Upon the condition of things here presented, it is to be remarked :-

1. Where, as here, the existence of a common interest in property, and the transaction of a joint business are admitted, and one of the parties applies for an adjustment of the accounts respecting it, the court will not accept a general denial of indebtment on the part of the respondent, however positive, and dismiss the bill, without referring it to a master for an investigation of the accounts, notwithstanding such denial may be accompanied with a statement of circumstances rendering it probable that as to such respondent the denial may prove well founded.

2. Especially will they not do this where the respondent does not assert a full knowledge of all the details of the accounts.   The result may prove different from what the respondent honestly anticipated when making his answer.

3. Nor will the master be precluded from receiving proof that the transactions of the partnership extended over a longer period of time than that specified in the answer.   The continuance, as well as the extent and amount of the partnership business, is fit matter for the master to report upon, subject to the exceptions which lie to his report.

4. While the court, in equity, will ordinarily give full effect to the statutes of limitation affecting actions at law in analogous cases, it must be remembered that in so doing it (to use the language of Shaw, C. J., in *Phillips, Judge*, v. *Rogers*, 12 Met. 411) "acts in obedience to the spirit of statutes of limitation, and rather adopts the reason and principles on which, as positive rules, they are founded, than the rules themselves."

Accordingly, if by the laches and delay of the complainant it has become doubtful whether the other parties can be in a condition to

produce the evidence necessary to a fair presentation of the case on their part, or it appears that they have been deprived of any just advantage which they might have had if the claim had been put forward before it became stale and antiquated; or if they be subjected to any hardship which might have been avoided by more prompt proceedings, although the full time may not have elapsed which would be required to bar any remedy at law, the court will deal with the remedy in equity as if barred; and, on the other hand, where it appears beyond question or dispute that lapse of time has not in fact changed the condition and position of the parties in any important particular, and there are any peculiar circumstances entitled to consideration as excusing the delay, they will not refuse the appropriate relief, although a strict and unqualified application of limitation rules might seem to require it.

In the present case, the respondent declares that no adjustment ever has been made; that he has always been ready to make a full and fair settlement of the business of the firm, claiming, however, that a large balance is due to himself upon such settlement, and he suggests nothing whatever in his answer to indicate that such settlement cannot be as well made now as at any period since the inception of the business. He does not plead the statute of limitations, and although under Rule vi, he may have the benefit of a plea in bar by inserting its substance in his answer, in the absence of any intimation in the answer that he claims exemption on the score of lapse of time, the court will not interfere to set up the bar, but will consider the respondent as waiving it, even though the facts alleged were such as to make it appear that it might be successfully interposed.

The distance of the parties from each other, one of them residing in a State, which, during a large part of the time has been in revolt against the general government, making communication with its citizens difficult, if not impracticable, and the difficulty of obtaining jurisdiction without consent of all parties interested, may well be considered as excusing the delay that has here occurred.

5. The respondent admits the reception by himself of funds be-

longing to the firm within six years previous to the filing of the bill.

6. While actions of account, and upon the case (except for slander) " other than such accounts as concern the trade of merchandise between merchant and merchant, their factors and servants," were subjected to a limitation of six years by Statute of 1821, c. 72, § 7, both the provision as to actions of account, and the exception in favor of merchants' accounts disappeared in the revision of 1841, and have never since been reënacted ; and it may fairly be doubted whether actions of account at law, and the analogous remedy in equity by bill to compel an account can now be considered subject to any other than the general twenty years' limitation of all personal actions on any contract.

7. The fact of a demand for a settlement by the complainant, and a refusal by this respondent, can, in no event, affect any question between these parties except that of costs, and the decision whether or not it was made may well await the coming in of the master's report and ulterior proceedings. It is plain from the answer that a demand must have been a fruitless formality, for the parties differ *toto cœlo* as to the actual condition of the accounts.

> *Bill sustained. Master to be appointed at nisi prius.*

APPLETON, C. J.; KENT, WALTON, DANFORTH, and TAPLEY, J. J., concurred.