HYDE *v.* HYDE AND ANOTHER.

[IN CHANCERY.]

*Mortgage. Foreclosure. Opening Decree.*

On the facts in this case, *q. v.*, it was *held* that the decree of foreclosure could not be opened.

APPEAL from the Court of Chancery.

The bill alleged that on April 15, 1856, the orator and Daniel P. Fales executed and delivered to the defendant Beaman, who was an attorney at law, their promissory note for $1500, payable on demand with interest annually, together with a mortgage to secure the same on certain land described therein as twelve equal undivided seventeenth parts of a certain farm whereof Freelove Hyde, the orator's mother, who had a dower interest therein, had possession, which she retained until her death, which occurred after the bill was filed; that the orator was in fact surety for the said Fales; that on April 1, 1867, said Beaman procured a decree of foreclosure of said mortgage for the sum of $848.23, whereupon the orator called on said Fales for protection from the consequences thereof, and Fales agreed to protect him, all of which said Beaman then well knew; that the orator being unused to such matters, and relying on such assurance, and on said Beaman's knowledge thereof, and being notified by no one in relation to the matter, gave it no further attention, and always thereafter and until within a short time before the filing of the bill, believed

that said Fales paid said decree ; that nevertheless said Fales did not pay it, but allowed it to become absolute ; that the orator's interest in said farm consisted in a remainder after said dower interest, and that at the time the decree became absolute, its value was at least $6000 ; that the orator had other property, and could easily have redeemed said mortgaged premises ; that for a long time before the execution of said mortgage to a time not long before the filing of the bill, said Beaman was attorney and counsellor for the orator, among other things, in all matters between the orator and said Fales, of which said mortgage was a part, that their relations were confidential, and that the orator relied on him in all matters placed in his charge ; that said Beaman well knew the facts alleged, and knew that the orator would not knowingly have allowed said decree to become absolute ; that therefore said Beaman held the title to said premises in trust for the orator, and subject to the orator's right to redeem ; that on November 3, 1871, said Beaman exchanged his interest in said property with Nelson C. Hyde, a grandson of said Freelove, who then well knew the facts alleged, and who was in possession of said farm under an arrangement with said Freelove, made pursuant to a scheme on his part to possess himself of her interest, for a mortgage on certain other property of less value than the orator's interest in said farm, and of about the value of said Beaman's interest therein as fixed by said decree ; that said Nelson C. was also a client of said Beaman's, and had intimate business and personal relations with him, and procured said exchange to be made ; that said exchange was therefore in fraud of the orator's rights, and that the orator ought in equity to be allowed to redeem as to said Nelson C. *Prayer*, that said decree be opened, and the orator allowed to redeem, or that said Beaman be decreed to account with the orator as to the matter of his said trust ; and for further relief.

The answer of defendant Beaman admitted the execution of the note and mortgage as alleged, but averred that the orator was a principal and not a surety in said note ; admitted the foreclosure of said mortgage as alleged, but denied all knowledge of, and belief in, the alleged agreement by said Fales to protect the orator

from the consequences of said decree ; alleged the recording of said decree in the town clerk's office ; admitted that Beaman had acted as counsel for the orator, but denied that he ever had so acted in the matter of said mortgage, or that the relation of counsel and client ever existed between him and the orator in relation to said mortgage, or that the orator had ever reposed any trust or confidence in said defendant in relation to said mortgage that could in any way affect said defendant's right to collect the note thereby secured, and to avail himself of said decree, as the orator well knew ; alleged that said defendant did not know whether the orator easily could or would have redeemed said property before the decree became absolute, but that from the orator's conduct in not paying the mortgage debt though often requested, he was led to believe and did believe that the orator sought to evade its payment ; denied the holding of the property in trust, and the orator's right to redeem ; denied knowledge on the part of said defendant of the value of the property, but alleged said defendant's belief that it was not much more than the amount of the decree ; admitted the sale and conveyance to Nelson C. Hyde as alleged, but denied that said Nelson knew of any confidential relation between said defendant and the orator ; denied knowledge on the part of said defendant of any scheme of said Nelson's to get possession of a part of said property ; denied that said Nelson concealed his said purchase ; and denied the existence of intimate relations between the defendants.

The answer of defendant Nelson C. admitted the execution of said note and mortgage, the foreclosure thereof, and the alleged relationship between himself and the orator ; denied all knowledge on the part of said defendant at the time of his alleged purchase from said Beaman, that the orator was a surety only on said note ; denied all knowledge on the part of said defendant of confidential relations between said Beaman and the orator, and of said Beaman's alleged holding in trust ; and alleged that said defendant believed that the title was absolute in said Beaman ; denied that said defendant knew that the orator was ignorant that said title had become absolute ; denied the alleged scheme on his part to possess himself of said Freelove's property ; admitted the

alleged purchase of said property, and denied concealment thereof; and alleged that at the time of said purchase the property was worth but little if any more than the property given in exchange therefor.

The answers were traversed and testimony taken. At the hearing, in Rutland County, the Chancellor dismissed the bill. Appeal by the orator.

*Prout, Simons & Walker,* for the orator.

*G. W. Harmon* and *E. J. Phelps,* for the defendants.

The opinion of the court was delivered by

Ross, J. We have no difficulty in finding that the defendant Nelson C. Hyde had such knowledge of the relations existing between the orator and defendant John B. Beaman, in regard to the premises, that if the orator has the right to have the decree opened, and to be allowed to redeem as against Beaman, he has that right against Nelson C. Hyde. Hence, the principal question for consideration is, whether the facts shown by the orator entitle him to have the decree of foreclosure opened as against defendant Beaman. No question is made in regard to the power of the Court of Chancery to open the decree of foreclosure, and to let the orator in to redeem the premises, on a proper case being shown therefor. For this purpose the orator's solicitor relies largely on the fact that the premises foreclosed were of much greater value than the amount of the mortgage debt, and also that the orator must have intended to have redeemed, from the fact that he had previously paid more than half of the mortgage debt. These are facts to be considered, bearing on the right of the orator to have the decree opened, but are not determinative of that right. In connection with these facts the relations of the orator to defendant Beaman are urged, as bringing the case within the principle of the adjudged cases. There is no doubt but the Court of Chancery will ordinarily open a decree obtained by an attorney against one sustaining to him the relation of client in the proceeding of foreclosure. The defendant Beaman, though

generally the attorney of the orator in most of his legal matters, was not the solicitor of the orator in the foreclosure proceedings sought to be opened, nor was he under employment by the orator to attempt to enforce the collection of his mortgage debt from Fales, and so relieve the property of the orator from its payment. Hence, in those proceedings, the defendant Beaman was under no disability from obtaining a valid foreclosure against the property of the orator by reason of his relations to the orator, partaking in any degree of that of his solicitor for any purpose. In that proceeding Beaman's relations to the orator were wholly those of an adversary. By the service of the bill, which the orator acknowledges, the orator was charged with notice and knowledge that Beaman was proceeding adversely against him, to secure to himself the title to the property in controversy. His failure to read the copy thus served upon him, and take warning therefrom, can only be attributed to the negligence of the orator. The obtaining of a decree of foreclosure by Beaman, and causing the same to be recorded in the bond records of the town of Poultney, where the land was situated, charged the orator with notice of the consummation of the foreclosure. That the orator did not read the copy duly and legally served on him, and so failed to be aware of its contents, as well as that he did not actually learn of the decree from its record within less than five years from the time it was recorded, can only be charged to his extreme carelessness and negligence in the premises. Courts of equity do not relieve a party from the results of his own carelessness and negligence, when such carelessness and negligence are in no way induced by the conduct of the other party. But it is urged that the orator's relation to Beaman was, at least, one of confidence. No doubt the orator had confidence in Beaman as a just and fair man, who would do right with him in the premises. And no doubt Beaman's conduct towards the orator had been such as to entitle him to have such confidence reposed in him. But this confidence did not bar Beaman from collecting his debt by foreclosing his mortgage against the orator; nor did it excuse the orator from reading and acting with reference to the copy of the bill of foreclosure which Beaman had caused to be served on him.

There was nothing in their relations to warrant the orator in entertaining the confidence that Beaman did not mean anything by the service of the foreclosure suit, and so to slumber in regard to it for six years after the suit was brought.   It is urged that Beaman ought to have spoken to the orator about the foreclosure proceedings, and to have told him that he would lose his land if he did not redeem it.   Beaman did speak in the most effective way to that end, by the service of the bill of foreclosure ;   but such speaking was unheeded by the orator.   Thereafter, it seems to us, it was the duty of the orator to inquire of Beaman in regard to the ultimate object and purpose of the foreclosure suit, if he entertained any doubt in regard thereto.   The orator's carelessness and negligence has brought upon him the loss of quite an amount of property, and we should have been glad to have been able to find some legal way to have relieved him from such loss. But we are not ;   and however hard it may be for the orator to bear the consequences of his carelessness and negligence, especially in the view that Nelson C. Hyde, who was aware of his situation, is to reap the benefit therefrom, we cannot go outside of well-settled legal principles, and make this case a law unto itself. More mischief would result from such a decision than benefit to the orator.

Decree affirmed, and cause remanded.