## S. U. KING ET AL. *v.* WHITE & HAMMOND, EX'RS.

*Equity. Partners. Laches. a bar to an accounting. Jurisdiction as against estate.*

1. Where a partner after the dissolution of the partnership has unreasonably slept upon his rights until the original transaction has become obscure so that it is difficult to do entire justice in the premises, equity may refuse an accounting, although the claim is not barred by the statute of limitations; especially where the partner against whom the accounting is sought has deceased, and the orators have acquiesced for several years in what was understood to be a settlement of the partnership affairs.

2. The estate of the deceased partner would be responsible, under the circumstances of this case, for the avails of partnership property left in his hands upon such settlement and afterwards disposed of by him.

3. Where one of the several partners dies, the survivors may maintain a bill for an accounting against his estate, notwithstanding that they have presented their claim to commissioners and the same has been disallowed.

This was a bill in equity for an accounting. Heard upon the pleadings, a master's report and exceptions thereto, at the December term, 1889, Windsor county. Taft, Chancellor, decreed, *pro forma*, that the orators recover eighteen hundred twenty dollars and their costs.

The defendants appeal.

The case fully appears in the opinion.

*Gilbert A. Davis,* for the orators.

The master reports that the partnership books were *not* correct. The fact that they appear to be is immaterial. *Merriam* v. *Barton,* 14 Vt. 501; *Mott* v. *Harrington,* 15 Vt. 185; R. L. ss. 701, 728.

King et al *v.* White & Hammond.

The books are not conclusive. They are simply evidence. *Caldwell* v. *Leiber*, 7 Paige 483; *Heartt* v. *Corning*, 3 Paige 566·; *Boyd* v. *Foot*, Bosw. 110; 5 U. S. Dig. 839; *Perry* v. *Banks*, 14 Ga. 699; *White* v. *Tucker*, 9 Iowa 100; *Tucker* v. *Peaslee*, 36 N. H. 167; *Boise* v. *McGinn*, 8 Ore. 466; *Hunter* v. *Aldrich*, 52 Iowa 442.

The presentation of this claim to the commissioners on Harlow's estate affects nothing, for they had no jurisdiction to hear it. *Brown* v. *Est. of Sumner*, 31 Vt. 67; *Sparhawk* v. *Buell's Est.*, 9 Vt. 41; *Herrick* v. *Belknap Est.*, 27 Vt. 698; *Jones* v. *Cooper*, 2 Aik. 54; *Blackmer* v. *Blackmer*, 5 Vt. 355; *Graves* v. *Wakefield*, 54 Vt. 317; *Mann* v. *Mann's Est.*, 53 Vt. 50; *Green & Roberts* v. *Chapman et al.*, 27 Vt. 239; *Wiswell* v. *Wilkins*, 4 Vt. 157; *Beech* v. *Hotchkiss*, 2 Conn. 425; *Kendricks* v. *Tarbell*, 27 Vt. 237; *LaPoint* v. *Scott et al.*, 36 Vt. 633; *Probate Court* v. *Winch*, 57 Vt. 284; *Hendrick* v. *Cleveland*, 2 Vt. 329; *Smith* v. *Rice*, 11 Mass. 507; *Hunt* v. *Hapgood*, 4 Mass. 117; *Sumner* v. *Parker*, 7 Mass. 79; Ch. J. Shaw in *Peters* v. *Peters*, 8 Cush. 544; *Sowles* v. *Quinn*, 61 Vt. 356.

One partner cannot maintain an action at law against his copartner for an accounting.

*Holmes* v. *Higgins*, 1 B. & C. 76; *Smith* v. *Allen*, 18 John. 245; *Gomersall* v. *Gomersall*, 14 Allen 60; *Francisco* v. *Fitch*, 25 Barb. 130; *Morin* v *Martin*, 25 Mo. 360; *Hammond* v. *Hammond*, 20 Ga. 556; *Wiggin* v. *Cummings*, 8 Allen 353; *Burns* v. *Nottingham*, 60 Ill. 531.

There is no question before the court as to the statute of limitations.

*Spear & Carlton* v. *Newell*, 13 Vt. 288.

Harlow's estate should account for interest.

*Stoughton* v. *Lynch*, 2 John. Ch. 209; *Beacham* v. *Eckford*, 2 Sand. Ch. 117; *Dimond* v. *Henderson*, 47 Wis. 172; *Stoughton* v. *Lynch*, 1 John. Ch. 467; *Andrews* v. *Andrews*, 3 Bradf. 99; *Hollister* v. *Barkley*, 11 N. H. 501.

There is no presumption of payment.

*Wells et ux* v. *Morse,* 11 Vt. 9 ; *Martin* v. *Bowker,* 19 Vt. 526 ; *Todd* v. *Rafferty,* 30 N. J. Eq. 254 ; *Arnett* v. *Finney,* 49 N. J. Eq. 147 ; *McClung* v. *Capehart,* 24 Minn. 17 ; *Hammond* v. *Hammond,* 20 Ga. 556 ; *Massay* v. *Tingle,* 29 Mo. 437 ; 2 Lind. Part. 509 and note ; *Brewer* v. *Browne,* 68 Ala. 210 ; *Bradford* v. *Spyker,* 32 Ala. 134 ; *Wells* v. *Brown,* 83 Ala. 161 ; *Causler* v. *Wharton,* 62 Ala. 358 ; *Foster* v. *Rison,* 17 Gratt. 321 ; *Jordan* v. *Miller et al.,* 75 Va. 442 ; *Hutchins* v. *Gilman,* 9 N. H. 363 ; *Miller* v. *Miller,* 8 L. R. Eq. 499 ; *Stanford* v. *Tuttle,* 4 Vt. 82 ; *Farnam* v. *Brooks,* 9 Pick. 242 ; *Robinson* v. *Hook,* 4 Mason 139.

Nor have the orators been guilty of laches.

*Warren* v. *Warren,* 30 Vt. 530 ; *Battell* v. *Matol,* 58 Vt., 271 ; *Atwater* v. *Fowler,* 1 Edw. Ch. 423 ; *Sullivan* v. *Portland & K. R. R.,* 94 U. S. 806 ; *Reynolds* v. *Sumner,* 126 Ill. 58.

*William Batchelder* and *J. J. Wilson,* for the defendants.

The accounts as stated upon the partnership books are, under the circumstances of this case, conclusive. The orators with full knowledge, or the opportunity to obtain full knowledge, have for years acquiesced in that statement and settlement and cannot now object.

*McDaniels* v. *Bank of Rutland,* 29 Vt. 230 ; *Hyde* v. *Hyde et al.,* 50 Vt. 301.

No interest is recoverable. There was no contract to pay interest, and Harlow did not neglect to pay over these sums after he was legally bounden to do so.

The relation of debtor and creditor did not exist until after a demand.

*Brainerds* v. *C. T. Co.,* 29 Vt. 154 ; *Sprague* v. *Sprague,* 30 Vt. 483 ; *Evans* v. *Beckwith,* 37 Vt. 285 ; *Blodgett's Est.* v. *Converse Est.,* 60 Vt. 410 ; *Hall & Chase* v. *J. & J. H. Peck,* 10 Vt. 478 ; Chit. Con. 238 and note ; 1 Chit. Pl. 330 ; *Miller*

v. *Clark*, 5 Lans. 388; *Williams et al.* v. *Storrs*, 6 John. 353; *Mason* v. *Roosevelt et al.*, 5 John. 532; *Chadworth* v. *Edwards*, 8 Ves. 46.

The orators' claim is stale. Having for years acquiesced in this settlement, they cannot now overhaul it after it has become impossible to ascertain and do entire justice in the premises.

*Sullivan* v. *P. &c. R. R.*, 94 U. S. 806; Kerr. Fr. 304; 2 Bouv. Law Dict. 40; *Daggett* v. *Helen*, 17 Gratt. 96; *McKnight* v. *Taylor*, 1 How. 161; *Boswell* v. *Coakes*, L. R. 27, Ch. Div. 424, 457; *Sharp* v. *King*, 3 Ired. Ch. 402-5; *LeGuen* v. *Governeur*, 1 John. Cas. 436; *Badger* v. *Badger*, 2 Wall. 95; *Marsh* v. *Whitmore*, 21 Wall. 185; *Godden* v. *Kimball*, 99 U. S. 202; *Brown* v. *Co. of B. V.*, 95 U. S. 161; *Rayner* v. *Pearsall*, 3 John. Ch. 578; Lind. Part. 464; Per. Tr. 869.

Especially when the claim is not made until after the death of the person against whom the relief is sought.

*Bell* v. *Hudson*, 73 Cal.; *Moore* v. *White*, 6 John. Ch. 360; *Barnes* v. *Taylor*, 27 N. J. Eq. 259; *G. A. Sem.* v. *Keifer*, 43 Mich. 111; *Jenkins* v. *Pye*, 12 Pet. 241; *Beckford* v. *Wade*, 17 Ves. 96.

The fact that the claim is not barred by the statute of limitations does not conclusively show that it is not stale. Each case is controlled by its own circumstances.

*Stout* v. *Seabrook's Exrs.*, 30 N. J. Eq. 187; *Bell* v. *Hudson*, 73 Cal. 287; *Harwood* v. *R. R. Co.*, 17 Wall. 81; *Sullivan* v. *P. & R. R.*, 94 U. S. 811; *Godden* v. *Kimmell*, 99 U. S. 201; 2 Sto. Eq. Jur. 1820 *et passim.*

The opinion of the court was delivered by

TYLER, J. The bill alleges a large indebtedness from Harlow's estate to the orators and prays for a general accounting. The answer avers that Harlow in his lifetime accounted to the orators for all money received by him on account of the partner-

ship and paid over to them the amounts respectively their due, that the orators received and accepted the same and never thereafter made claim to the contrary until long after Harlow's death.

The master reports that a co-partnership was formed between the orators and Hiram Harlow, August 1, 1875, and terminated by a sale of most of the partnership property in September, 1877, some machinery remaining to be sold and some debts to be collected after the latter date. There was no formal dissolution. While the partnership continued Harlow was its treasurer, financial manager, purchasing agent and bookkeeper. He owned the shop in which the business of manufacturing scythe-snaths was carried on and furnished the capital for its prosecution. King had charge of the work of manufacturing and the payment of the employees, and the other three partners were laborers. They and King were each to have a dollar a day for services, and whatever profits might accrue from the business were to be divided equally among the five partners. Some dissatisfaction arose on the part of the Laceys, who desired and demanded a settlement, which was the occasion of Harlow's disposing of the property. The books of the company were kept by Harlow at his private office some distance from the shop, but the other partners were frequently at the office and the relations among the five were friendly. There never was any agreement as to what compensation Harlow should have for his services, rent of shop and use of capital, but the orators expected he would be paid a reasonable compensation and he made such charges therefor upon the books as he thought best and acted in good faith in making them.

It is not found that the books were improperly kept. Harlow was a skillful accountant, and the books showed the daily business of the firm, but the double entry system adopted by him was such that persons unskilled in bookkeeping as the orators were, and lacking the particular knowledge of transactions which Harlow alone possessed, could not decide with any certainty

whether the entries were properly made or not. There was no concealment by Harlow of his charges; by inquiry the orators might have obtained full knowledge in relation thereto. He was the only person who had any practical knowledge of the entries upon the books, and the orators were content to take his statements and did not inspect the books themselves or obtain information from him concerning the condition of the company.

In October, 1877, Harlow divided $2,500 among the five partners, and in March, 1880, he made a further division of $846.20, which the orators regarded as a final division and settlement of all the moneys that had then come into his hands.

The master finds that for some unexplained reason a balance of $26.01 remained in Harlow's hands after the last division, that Harlow overcharged $316.67 for rent, $391.00 for services, $145.54 for interest on capital furnished, that soon after March 1, 1880, he sold machinery for $50 and in February, 1882, the remainder of the machinery for $250. The master computes interest on the first four items from the time they appeared on the books to the time of hearing and on the last two from the respective dates of sale until the same time, making the sum of $1,867.57 which the defendants should account for to the orators.

It is found that on the day of the last division Harlow made a charge on the books in his favor, "for transfer of accounts, services, rents, &c., all $1,016.00," which was his first and only charge on book for services. While the company was in business he charged $900 for rent, which was $500 for the first year and at the rate of $300 thereafter. What use of shops was intended to be included in the $1,016.00 item does not appear.

King does not seem to have been in Windsor after September, 1877. The Laceys were in and about there a considerable portion of the time thereafter until March 1, 1880, but whether they were present at the division then made does not very clearly appear. The master says there was no direct evidence on that subject. He seems to infer that they were not present from the

fact that they did not discover what he thinks a manifest error in the charge for rent.   He says, however, " that so far as they were concerned knowledge of the progress made by Harlow in settling the firm's business was not lacking for want of opportunity to have applied to Harlow for such knowledge." * * * "They knew of and consented to the division, however little knowledge they may heve had of the manner in which it was made."

The orators evidently received their respective shares after the division without objection, and apparently with satisfaction. It does not appear that thereafter during Harlow's life-time they made any inquiry of him relative to the basis of the division, or in any manner expressed dissatisfaction therewith.

The master submits to the court the question whether a recovery of what he finds to be overcharges is barred by the division and settlement; also whether it is barred by the disallowance by the commissioners upon Harlow's estate and the acceptance by the Probate Court of the commissioners' report. .

The difficulty there is in arriving at the truth when the party who made the entries is dead and the others are disqualified by law from testifying is apparent throughout this report. The master declares that the case is remarkable for the dearth of testimony on every material issue.

In *Lindsay Petroleum Co.* v. *Hurd,* L. R. 5 P. C. 221, Lord Selborne says :   " Where it would be practically unjust to give a remedy either because the party had done that which might fairly be regarded as equivalent to a waiver of it, or when, though not strictly having waived the remedy, he has yet put the other party in a situation in which it would not be reasonable to assert the remedy against him ;—in either of these cases lapse of time and delay are very material."

Harlow's charge of $500 for first year's rent may illustrate. It was made in due course of business and stood upon the books presumably with the orators' knowledge and approval; yet the master twelve years later, without the testimony of any of the

co-partners, but from such evidence as could then be produced finds the charge excessive.

A claim in equity ought to be exhibited within a reasonable time that the court may not do injustice to the defendant. *Atkinson* v. *Robinson*, 9 Leigh, 393. There is no absolute rule. Length of time, or long acquiescence·in a transaction may be a bar to relief in cases where the transaction, if seasonably impeached, would be set aside. It is in some measure left to the discretion of the court to be determined by the nature of the demand and the degree of inconvenience which its enforcement would occasion to the opposite party.

*Rayner* v. *Pearsall*, 3 John. Ch. 586 ; Sto. Eq. Jr. 1520 and notes.

In *Mooers* v. *White,* 6 John. Ch. 368, it was held that courts of equity would not permit accounts to be overhauled in favor of a party who had slept upon his rights without any just cause for a number of years, and more especially against the representative of a party who may be supposed to have had the means of defence in his life-time, but who may have left his successors without the requisite vouchers.

*McKnight* v. *Taylor,* 1 How. 168, Chief Justice Taney, using the language of Lord Camden in *Smith* v. *Clay,* 3 Bro. C. C. 639, said there must be conscience, good faith and reasonable diligence, to call into action the powers of a Court of Equity. In matters of account, where they are not barred by the act of limitations, Courts of Equity refuse to interfere after a considerable lapse of time, from considerations of public policy and from difficulty of doing entire justice when the original transactions have become obscure by time and the evidence may be lost.

In *Badger* v. *Badger,* 2 Wall. 94, the court said : " Courts of Equity, acting upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere when there has been gross laches in prosecuting the claim, or long acquiescence in the operation of adverse rights," and

recognized the rule that : "The party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claims; how he came to be so long ignorant of his rights and the means used by the respondent to fraudulently keep him in ignorance, and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer."

The rule is laid down in *Stout* v. *Seabrook*, 30 N. J. Eq. 187, that a decree requiring a co-partner to account should be denied in every case where it appears that the party seeking the account has, by his laches, rendered it impossible for the court to do full justice to both parties; *Lawrence* v. *Rokes*, 61 Me. 38.

In *Sullivan* v. *Portland, etc., Railroad*, 94 U. S. 807, the court by Swayne, J. said : "Every case is governed chiefly by its own circumstances; sometimes the analogy of the statute of limitations is applied; sometimes a longer period than that prescribed by the statute is required; in some cases a shorter time is sufficient; and sometimes the rule is applied when there is no statutable bar. It is competent for the court to apply the inherent principles of its own system of jurisprudence and decide accordingly." *Bell* v. *Hudson*, 73 Cal. 285, (2 Am. St. R. 795 and notes.)

It is said by this court in *McDaniels* v. *Bank* of Rutland *et al.*, 29 Vt., 230, "It is true courts of equity will grant relief for ignorance as well as for a mistake of facts; but the principles on which relief is granted in those cases are very different. When the party has acted in ignorance of facts merely, courts of equity will never afford relief where actual knowledge could have been obtained by the exercise of due diligence and inquiry. That was the very point determined in the case of *Penny* v. *Martin*, 4 John. Ch. 567. Justice Story has also observed, Eq. Jur. Sec.

146 and note, that, " it is not sufficient that the fact is material; but it must be such that he could not with reasonable diligence get knowledge of when he was first put upon inquiry. For, if by such reasonable diligence he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence." *Hyde* v. *Hyde*, 50 Vt. 301, *Durkee* v. *Durkee*, 59 Vt. 70.

No reason is assigned in the bill why the orators did not call upon Harlow in his life-time to correct what the master finds are overcharges, nor for their delay in bringing this suit. On account of their acquiescence in the division of March 1, 1880, their laches, the danger of doing injustice in attempting to adjust the accounts now that Harlow has deceased, we think that what the master finds the several partners then supposed was a final division and settlement should be held conclusive.

All the transactions prior to and including March 1, 1880, were entered by Harlow upon the books, and all the money received by him down to that date was divided among the partners on the basis of those entries. The $300 which he subsequently received stands differently. The machinery was left with him to dispose of and account for. It is found that when sold the proceeds were not divided nor entered upon the books. The defendants must therefore render an account for the $300 unless it is barred by the disallowance by the commissioners and the acceptance and record of their report by the Probate Court. This being a partnership where there are more than two interests the Probate Court did not have jurisdiction. *Kendrick* v. *Tarbell*, 27 Vt. 512. The act of 1852, R. L. 1214, conferred only upon County Courts the same powers as Courts of Chancery have in settling such matters. The scope of the bill is to settle the partnership accounts and ascertain each partner's relation to the firm.

The defendants are also chargeable with interest on the sums

King et al *v.* White & Hammond.

of $50 and $250 from such times after their receipt by Harlow as he reasonably might have divided them.

*Decree reversed and cause remanded with mandate that the defendants pay to the orators $240 and interest.*