Rockingham, }
June, 1894. }

## WIGGIN v. SWAMSCOT MACHINE CO. & a.

A court of equity will not compel members of a copartnership to account for the profits of their dealings with a corporation of which they were directors at the suit of a stockholder who knew of the transactions, and made no objection until twelve years after they had ceased.

BILL IN EQUITY, filed August 27, 1890, for discovery and an accounting. The plaintiff is a stockholder in the Swamscot Machine Company, a corporation created July 9, 1846, to carry on a manufacturing business at Newmarket in this county. At the hearing another stockholder, Tebbetts, moved for leave to join in the bill as a plaintiff. Receivers of the property of the corporation, appointed September 21, 1893, have prosecuted the suit since May 7, 1894, with the leave of the court. Facts found by a referee.

From 1857 to 1878 the defendant, Paul, was a director and the president and agent of the corporation. There were five directors; and, during the same time, Paul, two of the other directors, and two other persons were partners, doing business in Boston, Massachusetts, under the firm name of George K. Paul & Co.,—the three directors owning the greater part of the capital of the firm. The corporation consigned some of its manufactures to the firm, who sold them, and accounted, and paid for them at prices which the corporation received for like goods from other customers. The firm enjoyed no advantage over others in this respect. Their entire sales amounted to over $3,000,000, more than half of which were of the corporation's goods. They generally made a profit in selling these goods, but the amount of their net profits upon them cannot now be ascertained. They made losses otherwise, became insolvent in 1878, and then sold their stock and business to the corporation at a fair valuation.

In 1872 the corporation received in payment of a debt, an equity of redemption of certain real estate in Boston, worth $12,-000 and mortgaged for $7,000. The title was taken in the name of Paul. In September of that year, a minority of the stockholders, owning less than half of the capital stock, represented in writing to the directors that, in their opinion, the corporation had not paid Paul adequate compensation for his services as president and agent, and "ought to recognize in a substantial way the fact that mainly by his individual talents and faithfulness" it had paid regular dividends and increased its property exceptionally; and they requested the directors to release to him the interest of the corporation in the above-mentioned equity of redemption. This the directors subsequently did, Paul not act-

ing with his associates in the matter. Paul accepted the release, has paid the mortgage debt, and now holds the property.

The stock now owned by the plaintiff, Wiggin, formerly belonged to her father, George O. Hilton, who died in 1866. By his will, he bequeathed the stock to his widow for life, and to the plaintiff after her decease. The widow died in 1872. Hilton and his widow knew that Paul was interested in the firm of George K. Paul & Co., and as early as 1887 Wiggin learned of it and of the release by the corporation to Paul of its interest in the Boston real estate. Tebbetts had no knowledge of these facts until after this suit was begun; but the person of whom he purchased his stock in 1867 knew of Paul's membership in the firm.

If, upon these facts, the bill cannot be maintained, it is to be dismissed.

*Samuel W. Emery*, *Edwin G. Eastman*, and *Woodward Emery* (of Massachusetts), for the plaintiff.

*Frink & Batchelder*, for the defendants.

CHASE, J. "If an agent to sell become the purchaser, or if an agent to buy be himself the seller, a court of chancery, upon the timely application of the principal, will presume that the transaction was injurious, and will not permit the agent to contradict this presumption, unless, indeed, he can show that the principal, when furnished with all the knowledge he himself possessed, gave him previous authority to be such buyer or seller, or afterwards assented to such purchase or sale." 1 Par. Cont. 87; *Pearson* v. *Railroad*, 62 N. H. 537, 543; *Fisher* v. *Railroad*, 50 N. H. 200, 205. Relying upon this principle, the plaintiffs claim that the net profits received by George K. Paul & Co. from sales of the Swamscot Machine Company's goods belonged to the corporation, and are constructively held in trust for it by the firm; and that Paul, as a member of the firm, should now account for them. The bill was not filed until thirty-three years after the firm commenced, and twelve years after it ceased, business. The question is, whether equity will enforce the claim, if well founded, after so great a lapse of time.

In *Beckford* v. *Wade*, 17 Ves. 87, *Grant*, M. R., said: "It is certainly true that no time bars a direct trust, as between *cestui que trust* and trustee; but if it is meant to be asserted that a court of equity allows a man to make out a case of constructive trust at any distance of time after the facts and circumstances happened out of which it arises, I am not aware that there is any ground for a doctrine so fatal to the security of property as that would be; so far from it, that not only in circumstances where

the length of time would render it extremely difficult to ascertain the true state of the fact, but where the true state of the fact is easily ascertained, and where it is perfectly clear that relief would originally have been given upon the ground of constructive trust, it is refused to the party who, after long acquiescence, comes into a court of equity to seek that relief." To the same effect are, *Townshend* v. *Townshend,* 1 Bro. Ch. 550, 554; *Wentworth* v. *Lloyd,* 32 Beav. 467; *Hovenden* v. *Annesley,* 2 Sch. & Lef. 607, 633; *Edwards* v. *University.* 1 Dev. & Bat. Eq. 325; *Ashhurst's Appeal,* 60 Pa. St. 290; 1 Per. Tr., *s.* 228; 2 Sto. Eq. Jur., *s.* 1520 and notes; Ad. Eq. 62.

"Nothing can call forth" a court of equity "into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced, and, therefore, from the beginning of this jurisdiction there was always a limitation of suits in this court." *Smith* v. *Clay,* Amb. 645; *McKnight* v. *Taylor,* 1 How. 161, 168; *Sullivan* v. *Railroad,* 94 U. S. 806, 811, 812; *Brown* v. *County,* 95 U. S. 157, 160; *Hall* v. *Clagett,* 48 Md. 223, 243; *Foster's Curator* v. *Rison,* 17 Grat. 321, 347; *Harrison* v. *Gibson,* 23 Grat. 212; *Hatcher* v. *Hall,* 77 Va. 573, 576; *Lawrence* v. *Rokes,* 61 Me. 38, 42; *Royal Bank of Liverpool* v. *Railroad,* 125 Mass. 490, 494; *Snow* v. *Company,* 158 Mass. 325; *Pickering* v. *Pickering,* 38 N. H. 400, 406; *Hathaway* v. *Noble,* 55 N. H. 508; *Chamberlain* v. *Lyndeborough,* 64 N. H. 563, 564; *Clark* v. *Clough,* 65 N. H. 43, 79.

Examining the circumstances of this case in the light of these principles, nothing is discovered that calls the court into activity. On the other hand, satisfactory reasons appear why it should remain inactive. The prior owners of the stock now owned by Mrs. Wiggin knew of the Boston store and of Paul's membership in the firm carrying on business there; and she learned of these facts three years at least before she instituted this suit. Considering the character and magnitude of the business transacted between the corporation and the firm, and the length of time it continued, it is hardly conceivable that any stockholder exercising reasonable diligence in respect to his corporate interests should fail to learn of the existence of the firm and of its relations to the corporation before those relations ceased. Equity will not lend its aid to enforce a claim set up after such long and unexplained delay, especially when it appears that complete justice cannot be done.

No ground is shown on which the claim concerning the real estate transferred to Paul in 1872 can be maintained. The transfer was made in part payment for services, and it does not appear that it would have been set aside in a suit seasonably brought.

*Bill dismissed.*

All concurred.