### LOUISA B. DRAKE *vs.* JOHN WILD et al.

#### October Term, 1896.

Present: ROSS, C. J., TAFT, ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

*Legatee's Duty to Elect—Estoppel—Lapse of Time a Bar in Equity.*

A legatee under a will which assumes to dispose of the legatee's own property to others, is bound to elect whether he will accept the provisions of the will or claim his own.

The oratrix was estopped from asserting her title to a trust fund disposed of by the will of her father as his own, for she had accepted the provisions of the will in her own favor during a long series of years, occupying and finally selling the real estate devised to her, and presented no claim against the estate, but suffered the trust property to be inventoried and included in the accounts of the executors at two judicial settlements.

The will was itself a repudiation of the trust, and the oratrix, having remained silent for thirteen years thereafter, is barred also by lapse of time in analogy to the statute of limitations.

The oratrix must be presumed to have known such matters of law as that she was her mother's sole heir, and that her father could not, without her consent, dispose of the property which she inherited from her mother.

It is too late for the oratrix to make a new election, for that would prejudice other rights which have become fixed in reliance upon her conduct.

BILL IN CHANCERY. The cause came on for hearing upon the pleadings and master's report at the May Term, 1896, Windsor County. *Tyler*, Chancellor, rendered a *pro forma* decree dismissing the bill with costs. The oratrix appealed.

*D. C & J. D. Denison* for the oratrix.

The trust found by the master is an express one. *Drake* v. *Wild*, 65 Vt. 611.

Acquiescence is a matter of defence and to be available must have been with full knowledge of the party's legal right. *Farrant* v. *Blanchford*, 1 DeG. J. & S. 118; *Ashton* v.

*Thompson*, 18 N. W. Rep. 918; *Wade* v. *Pulsifer*, 54 Vt. 45, 65; Kerr on Fraud and Mistake, 300. The report fails to show that the oratrix knew that she had any right or power to assert her claim. Acquiescence will not be presumed from mere lapse of time in the case of a *cestui que trust*.

The trustee having commingled the trust fund with his own so that it could not be identified, the whole mass is held until the trust is satisfied. Pomeroy, Eq. Juris. § 1076; *Drake* v. *Wild*, 65 Vt. 611. The trustee, were he living, would be estopped to deny his daughter's right to her own, and the legatees, the defendants, are no better situated. *Drake* v. *Wild, supra*.

The oratrix is not concluded because she received money from the executors; it was her right to get what she could.

*Stewart & Wilds* for Middlebury College.

*Gilbert A. Davis* and *A. M. Albee* for other defendants.

TYLER, J. This case was before the court upon a demurrer to the bill and is reported in 65 Vt. 611. The following are the material facts since reported by the Master:

Cyrus B. Drake and Louisa Smith were married in the year 1839, and the oratrix, their only child, was born in 1843 and always lived with her parents. Louisa died in the year 1870, and Cyrus B. in 1878. Mrs. Drake's father died in 1867, and her share of his estate was $4,457.08, which the administrator in December, 1868, paid to Mr. Drake by her instructions. Mr. Drake retained possession and control of the fund to the time of his death and managed it as he thought best without accounting to anyone. As he collected it he mingled it with his own property and out of it the family was supported, and in case of any surplus it was invested by him. His wife and daughter had great regard and respect for him and perfect confidence in his integrity and ability. * * * He received the fund to hold in trust for his wife, and did not intend to make any claim

thereto, and there is no evidence of any change in his intention until he included the fund in his will. Mrs. Drake died intestate and no administration has been taken on her estate.

Mr. Drake made his will the day before he died, the second clause of which is as follows:

"I give and bequeath to my daughter, Louisa B. Drake, my homestead consisting of about one-fourth of an acre of land, and house, barn and outbuildings thereon, to be hers absolutely. Also all the household furniture, clothing, books, keepsakes and pictures now in said house, or as much thereof as she may desire and select. I also direct that my homestead shall be appraised at its fair cash value, and a sum, which added to said appraisal will make in the whole the sum of eight thousand dollars, shall be invested to the best advantage, and the earnings or interest thereof shall be paid to my said daughter, Louisa B., annually for her support, during her natural life, and at her decease said amount so invested shall be paid Middlebury College at Middlebury, Vermont."

Nothing in the 3rd and 4th clauses is in issue here. By the 5th, 6th, 7th, and 8th clauses he gave to the American Board of Commissioners for Foreign Missions, to the Home Missionary Society, to the American Missionary Association, two thousand dollars each, and to the American Tract Society five hundred dollars, which four bequests he directed to be paid respectively, as soon as the amount could be .realized from his estate. He gave the residue of his estate to the American Education Society.

The will was duly probated and allowed, and the executors named therein were appointed by the probate court. Appraisers and commissioners were also appointed, who respectively performed their duties and returned their reports to that court. In August, 1878, an inventory of the estate was returned showing real estate amounting to seven hundred and fifty dollars and personal property to the

amount of $14,058.25, which included all of Mr. Drake's and his wife's property. The debts proved were $1,065.63.

The oratrix knew the contents of the will the day after its execution, and understood that her father must have intended thereby to dispose of his own and his wife's estate. She subsequently presented an account of fifty-four dollars against the estate which was allowed and paid. She presented no other claim. She continued to reside upon the homestead—which was all the real estate her father owned at his decease—until February, 1891, when she sold it and received the money for it, and she took possession of the household furniture and other personal property given her by the will, appraised at $541.25, and has ever since retained it. The executors also set apart a trust fund for her use as hereafter stated.

The oratrix knew that the inventory of her father's estate included the property of her mother as well as of her father. The executors supposed it was all the property of her father and managed and controlled it in that belief. The oratrix gave them no information on the subject and made no claim to her mother's property until the year 1888, when she claimed to Mr. Wild, the executor, that she ought to have certain gas stock because it came from her mother's estate.

In November, 1885, the executors settled an account in the probate court, in which they credited themselves with the real estate and the household furniture and other personal property specifically bequeathed to the oratrix and which they had passed over to her, leaving in their hands a remainder of $11,131.10. This settlement was made upon due notice by publication under an order of the probate court, and upon the settlement being made the executors resigned and their resignation was acted upon and accepted on June 2, 1886, and John Wild was appointed administrator *de bonis non.* No other account was settled in the probate court except one on May 27, 1896, by which it

appeared that the administrator had in his hands $12,555.63.

Quite a portion of the property of the estate, included in the inventory and managed by the executors, consisted of Western mortgages drawing eight and ten per cent. interest. The executors and the oratrix thought that the fund provided for in the will for the benefit of the oratrix was first to be provided for and kept good without reference to whether or not there were sufficient assets to pay all of the specific legacies. Acting upon this belief, the executors selected what they considered the best securities, sufficient to make up the amount of said trust fund, and set them apart for the purposes of the fund. This was approved of by the oratrix, and for a time the income from these securities was paid to her by the executors. Included in these securities were mortgages upon which the interest was subsequently defaulted, and then the executors decided to and did pay the oratrix six per cent. interest on the trust fund, which was satisfactory to her. Payments were thereafter made until 1888 or '89, when the judge of probate informed the administrator that the trust fund did not stand prior to the other legacies in the will, that the oratrix had received more than she was entitled to, and that as the estate had diminished by losses the trust fund should be proportionately lessened. Upon learning this the oratrix suggested that a portion of the estate came from the estate of her mother. No interest has been paid to her since July, 1889, and nothing has been paid to the defendants.

The oratrix now prays that the executors "be ordered to pay over to her the trust property so belonging to her mother with all the income and increase thereof."

The general rule in equity in such cases may be stated as follows: Where a will assumes to give to one of its beneficiaries property of another person for whom provision is likewise made in the will, the latter cannot take the provision made for him in the will, and also hold the

property, but must elect which he will take; that by taking a beneficial interest under the will he is held thereby to confirm and ratify every other part of the will; that if an heir prefers to take by descent, then a court of equity will compel him so to elect, and if he prefers to take as heir, it will not allow him also to have any other property or benefit under the will. *Huston* v. *Cone*, 24 Ohio St. 11; *Hyde* v. *Baldwin*, 17 Pick. 303; 1 Chit. Prac. 363; Pom. Eq. Jur. §§ 464-471; Sto. Eq. Jur. §§ 1075-6; 10 Eng. Rul. Cas. 351 and notes.

The rule is well stated in 1 Lead. Cas. in Eq. 402, as follows: "Equitable election usually arises where a testator gives to A certain property real or personal, and in the same will gives a third party certain property belonging to A; in this case, A must elect between the two. If he accepts the legacy or devise to himself, he must confirm and carry out the gift of his own property to the third party."

But the rule must be stated with the condition that, in order to make such an election binding upon the party, it must be made understandingly, that is, with a knowledge of the facts and of the party's rights under the will. Judge Story, in Eq. Jur. § 1097, says, that before a presumption of an election can arise from long acquiescence, or from other circumstances, it is necessary to show that the party acting or acquiescing was cognizant of his rights; also, whether the party intended an election, and whether he can restore the other persons, affected by his claim, to the same situation as if the acts had not been performed, or acquiescence existed. Other jurists say, "An election made with a knowledge of the party's rights."

The oratrix and the executors were in error in supposing that her trust fund was to be "kept good" out of the remaining portion of the estate, and it is contended that through ignorance of her rights the oratrix failed to claim her estate. A mistake may be of law, as where a person knows the state of the facts, but is ignorant of the legal

consequence,—forms a wrong opinion or draws a wrong inference from those facts; or it may be a mistake of fact, where some fact that really exists is unknown, or some fact is supposed to exist which really does not exist.

It is a rule, to which there are but few exceptions, that a mistake of law, pure and simple, is not adequate ground of relief; that where a party with knowledge of all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights and liabilities, under ignorance or error with respect to the rules of law controlling the case, courts will not, in general, relieve him from the consequences of his mistake. All persons of sound and mature mind are presumed to know the law; and what is meant is general law, the law of the country, and not private legal rights. 2 Pomeroy's Eq. Jurisp. §§ 841, 842.

It is stated in section 849, that mistakes of a person with respect to his own private legal rights and liabilities may be properly regarded and dealt with as mistakes of fact. While the author admits that the decision of each case must depend upon its own facts, he ventures to formulate the following as a rule of general application:

"Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property or contract or personal *status*, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

In his discussion of these rules Mr. Pomeroy says that negligence on the part of the person seeking relief must not enter into the case, but defines negligence as culpable negligence, upon which an action is maintainable. In this

State legal negligence is held to be the failure to exercise the degree of care that a prudent and careful man would exercise in like circumstances.

In the elaborate notes to _Alabama, etc., Ry. Co._ v. _Jones_, 73 Miss. 110: 55 Am. St. 488, this subject is considered and the following general rules are stated as the result of numerous authorities:

That ignorance or mistake of law alone, and hence of one's rights, does not, as a rule, excuse, and that it is no ground for either defensive or affirmative relief in equity, and such ignorance or mistake includes misconception of the law, erroneous deductions, and misapprehension of legal rights:

That ignorance of the law does not excuse a wrong done or a right withheld: That relief from liabilities under the law, arising from a known state of facts, will be denied. But to these general rules there are exceptions, as where there is a mistake of law caused by fraud, imposition or misrepresentation.

We think it will be found that in most of the cases cited in these notes and in Pomeroy, the party seeking relief was led into error by the action of the other party to a transaction, as in contracts and releases.

When the oratrix saw the will she knew that it included both estates, and she may have known how much of her mother's estate remained. She must be presumed to have known that she was her mother's sole heir, that her father had held her estate for her since her mother's death and that he could not convey it without her consent; yet with this knowledge she did not take administration upon her mother's estate, presented no claim for it to the commissioners, and made no objection that it was inventoried as if it were all her father's. She was negligent in not informing the executors that her mother left an estate and that it was included in the will, and in allowing them to proceed as if it were all her father's. If

they had known the facts they doubtless would have required her either to take her mother's estate or waive her claim to it.

She accepted and used the homestead and the personal property in the house, and approved of the selection and setting apart of the best securities. These acts, in the light of the knowledge she is shown to have had, must be considered as constituting an election. The facts brought in by the master's report make a case within the rule in 1 Pomeroy's Eq. Jurisp., § 507: "Wherever a case involves a necessity for election, it is an elementary rule that any person who is *sui juris*—not under disabilities—is both bound and entitled to elect." In this case the situation of the estates required an election to be made.

Can the oratrix now be permitted to elect over? We think not in view of the circumstances in which her election was made and of her subsequent action. She is chargeable with knowledge of the executors' settlement in the probate court in 1885, and that the court ordered the amount in their hands to be paid to the administrator *de bonis non*. To this settlement and order she made no objection. She made no complaint of the manner in which the estate had been settled until the year 1888, down to which time she had received her interest. When that partially failed she claimed a part of her mother's estate.

As the oratrix could not take both by the will and as heir, she acquired no title to the homestead except by the will; therefore her occupancy and sale of that property confirmed her election to take by the will. They were acts sufficient of themselves to constitute an election.

The master says that, without including Mrs. Drake's property, Mr. Drake did not have an estate sufficient to make the amount specifically disposed of by his will, leaving the inference that there was a sufficient amount by including it. According to the inventory, after deducting the debts

and reasonable expenses of administration, the entire property does not seem to have been quite sufficient. But whatever sum the estate amounted to, if the oratrix had elected to take by descent, for anything that appears, the estate might have been settled and distributed within a year from the testator's decease; and in that event, if the oratrix and the defendants had taken the securities upon their legacies, they might have disposed of them or held them, and each legatee suffered his own loss thereon. By the course pursued the estate has been kept open at expense to the defendants, and losses have been sustained upon the securities, which probably would have been avoided had the estate been settled, for the securities seem to have been good in 1878, and to have depreciated in value after they were set apart. It was on account of these losses that the oratrix brought her bill—that she might be exempt from them and take her mother's entire estate. The defendants have been prejudiced by her action and will be further prejudiced if the prayer of her bill is granted.

Whether the oratrix considered it for her advantage to take the bequest, or acted from a desire to carry out her father's wishes, does not appear. Whatever her motive, the legal effect of her action in respect to an election was the same.

It cannot be held that the executors acted for the defendants as well as for the oratrix in keeping the estate open and keeping up her annuity in consequence of losses, for it was to their prejudice and without their consent.

Previous to making his will Mr. Drake had held his wife's estate in trust and made no claim to it. By the will he repudiated the trust and claimed her estate adversely. The oratrix was *sui juris*, emancipated from all influence of her father, and, as the *cestui que trust*, she learned from the will of the repudiation. She brings her bill thirteen years afterwards. The facts reported bring the case within the rule

stated in the former opinion.    By analogy to the statute of limitations and her long acquiescence in the bequest, the oratrix is barred from maintaining her claim.    *King* v. *White and Hammond*, 63 Vt. 158.

The *pro forma* decree *is affirmed and cause remanded.*
*Thompson*, J., dissents.