JAMES A. NOYES, executor, *vs.* ELBRIDGE NOYES.

Essex.　January 8, 1919. — May 20, 1919.

Present: RUGG, C. J., CROSBY, PIERCE, & CARROLL, JJ.

*Election. Equity Jurisdiction,* To restrain prosecution of action at law. *Practice, Civil,* Equitable defence. *Waiver.*

In a suit in equity, by one as the surviving executor of the will of his father and also as devisee under that will against his brother, to enjoin the further prosecution by the defendant of an action at law on an agreement in writing executed by the plaintiff's testator about seventeen years before his death, it appeared that by the agreement sued upon in the action at law the testator promised that, if the present defendant would stay on the testator's farm and manage it for him in his old age, the testator would give the present defendant his homestead place, all his adjoining meadow, the "Knight" pasture, the "Highfield" pasture and all his live stock and farming implements. By a will executed more than seven years later and proved on the death of the testator nearly ten years after its execution, the testator gave the homestead place to the plaintiff, divided the "Knight" pasture and the "Highfield" pasture between the plaintiff and the defendant and gave to them his live stock and farming implements in equal shares, expressing a desire that his two sons should occupy the homestead and farm together as long as they could agree to do so. He gave the defendant four different lots of land not mentioned in the agreement and also a substantial amount of personal property not there mentioned. The defendant expressed no dissatisfaction with the will and shortly after its allowance took possession of the property devised and bequeathed by it to him and proceeded for several months to occupy and manage the farm jointly with the plaintiff. Afterwards the brothers separated and divided the live stock and farming implements and the defendant kept and continued to occupy and use as his own the property devised and bequeathed to him by the will. More than a year after the testator's death the defendant found the agreement in writing and brought the

action at law upon it against the plaintiff and another as the executors of the will. In this action the plaintiff as one of the defendant executors did not set up the equitable defence that the present defendant was precluded by his election in accepting the benefits of the will from setting up the agreement inconsistent with its provisions, and the plaintiff obtained a verdict, exceptions of the defendant being overruled by this court. *Held,* that the defendant had elected to accept the benefits of the will and thereby had lost his right to enforce the provisions of the earlier contract which would prevent its operation, and that the plaintiff was entitled to an injunction restraining the defendant from further prosecuting his action at law.

In the same case it also was *held* that the plaintiff, who in the action at law was sued as one of the executors, did not waive his right to assert his individual claim as devisee and legatee under his father's will by failing to set up as executor in the action at law the equitable defence of election under R. L. c. 173, § 28, as amended by St. 1913, c. 307.

It also was *held* that for the reason given above a denial in the action at law of a motion of the present plaintiff as one of the executors for a new trial in which to set up the principle of election did not affect the plaintiff's individual right to relief in the present suit.

In the same case it was *said* that it was not necessary to determine what might have been the effect of these matters if the present suit had been brought by the plaintiff merely as executor.

BILL IN EQUITY, filed in the Supreme Judicial Court on June 23, 1916, and amended as of August 30, 1916, by the surviving executor of the will of James Noyes, the father of the plaintiff and the defendant and by the plaintiff individually as devisee under that will, to enjoin the defendant from the further prosecution of an action at law, brought by him against the plaintiff and another as the executors of the will of James Noyes, on an alleged agreement in writing, quoted in the opinion, which action was before this court, as reported in 224 Mass. 125.

The defendant demurred to the bill, and the demurrer was argued before *Braley,* J., who made an interlocutory decree overruling it. The defendant appealed. The case was referred to a master, who filed a report, and later came on to be heard before *Braley,* J., who, at the request of the parties, reserved it upon the pleadings, the appeal from the interlocutory decree overruling the demurrer and the master's report for determination by the full court. The facts as found by the master are stated in the opinion.

*E. E. Crawshaw,* for the defendant.

*B. B. Jones,* (*E. Foss* with him,) for the plaintiff.

RUGG, C. J. This suit in equity is brought by the plaintiff, both as surviving executor of the will of James Noyes and as devisee

under that will in his personal right, to enjoin the defendant from further prosecuting an action at law upon a written agreement executed by the testator. A demurrer to the bill was overruled. Then the case was sent to a master, who has filed an elaborate report, and it comes before us on a reservation for determination upon the pleadings, the demurrer and the master's report.

The relevant facts are these: James Noyes died in January, 1913, leaving real estate of the value of $10,935 and personal estate of the value of $12,921.44, aggregating $23,856.44. By his will, executed on July 3, 1903, and admitted to probate on April 21, 1913, he made specific devises and bequests, which, together with the values of the several properties at the time of the testator's death so far as now pertinent are these: To the defendant he gave, "The Jerry field $600, The Ilsley field $650, The barn lot $200, The Smith lot $250, ½ Bradley meadow $75, ½ Highfield pasture $500, ½ Knight pasture $300, ½ stock, farm implements, carts and wagons $1,287.50, [total] $3,862.50." To the plaintiff he gave, "The homestead $6,168.46, The Cook lot $60, The Pettingell meadow $60, The Newhall lot $300, ½ Highfield pasture $500, ½ Knight pasture $300, ½ Bradley meadow $75, ½ stock, farm implements, carts and wagons $1,287.50, [total] $8,750.96." The clause of the will whereby the stock, farm implements, carts and wagons were given in equal shares to the plaintiff and the defendant contained these words: "it being my desire that my two sons James Addison and Elbridge shall occupy my homestead and farm together as long as they can agree to do so. In case they should decide to separate, I provide that my son Elbridge shall be given a suitable time in which to arrange for the removal of his share of the live stock, farming tools &c. and that that time be not less than sixty days." The will was read on the day of the funeral in the presence of most of the heirs at law, including the defendant. He expressed no dissatisfaction with it. Shortly after the allowance of the will he took possession of the property by it devised and bequeathed to him and proceeded for several months to occupy and manage the farm jointly with the plaintiff pursuant to the desire of the father expressed in his will. It was the defendant's intention at this time to try to get on with his brother, the plaintiff, and to carry out the terms of the will of his father. In November, 1913, the brothers separated, and the

live stock, farming tools and crops were divided between them and they ceased to carry on the farm together. Since then the defendant has retained possession of the real and personal property given him by the will and used it as his own. In April, 1914, the defendant wrote to the executors a letter in which he made claim to $300 per year for services for nineteen years and for the first time referred to an agreement whereby his father had promised him the homestead. He had not then found the written agreement, but in July, 1914, he brought the action at law (sought by the suit at bar to be enjoined) to recover damages arising from the breach by his father of an agreement in writing of the tenor following: "December 4, 1895. This is to certify that I, James Noyes, do promise to give to my son Elbridge Noyes my homestead place, all of my adjoining meadow, my Knight pasture, Highfield pasture, all of my stock, consisting of cows, horses, hogs, and all of my farming implements, carts, wagons, so forth, in consideration that he remain on the farm and manage the same for me in my old age; if he should leave at any time this agreement shall be valid and he shall share as I may make further provisions. James Noyes. And I, Elbridge Noyes, do promise to stay on the farm and comply with the above wishes and to carry out this agreement with my father James Noyes to the best of my ability. Elbridge Noyes." Of the property described in this agreement, the will made specific disposition of the homestead wholly to the plaintiff, and divided the Knight pasture, the Highfield pasture and the stock, farm implements, carts and wagons equally between the plaintiff and the defendant. The defendant's action at law on the agreement ultimately resulted in a verdict in his favor. See *Noyes* v. *Noyes*, 224 Mass. 125.

The provisions of the will for the defendant and the terms of his contract with the testator present a case for the application of the doctrine of election. That doctrine is well established in Massachusetts. It was stated by Chief Justice Shaw in *Hyde* v. *Baldwin*, 17 Pick. 303, at page 308, in these words: "If any person shall take any beneficial interest under a will, he shall be held thereby to confirm and ratify every other part of the will, or in other words, a man shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat,

or in any way prevent the full effect and operation of every part of the will." *Watson* v. *Watson,* 128 Mass. 152. *Smith* v. *Wells,* 134 Mass. 11. *Tyler* v. *Wheeler,* 160 Mass. 206, 209. The rule of election has been expressed in various phrases with reference to different states of facts. It was said by Lord Chancellor Cairns in *Codrington* v. *Codrington,* L. R. 7 H. L. 854, 861, "By the well settled doctrine which is termed in the Scotch law the doctrine of 'approbate' and 'reprobate,' and in our courts more commonly the doctrine of 'election,' where a deed or will profess to make a general disposition of property for the benefit of a person named in it, such person cannot accept a benefit under the instrument without at the same time conforming to all its provisions and renouncing every right inconsistent with them." "The general rule is, that a person cannot accept and reject the same instrument: and this is the foundation of the law of election." *Birmingham* v. *Kirwan,* 2 Sch. & Lef. 444, 449. It was stated by Lord Hatherley in *Cooper* v. *Cooper,* L. R. 7 H. L. 53, 69, 70, as follows: "The main principle was never disputed, that there is an obligation on him who takes a benefit under a will or other instrument to give full effect to that instrument under which he takes a benefit: and if it be found that that instrument purports to deal with something which it was beyond the power of the donor or settlor to dispose of, but to which effect can be given by the concurrence of him who receives a benefit under the same instrument, the law will impose on him who takes the benefit the obligation of carrying the instrument into full and complete force and effect."

The defendant accepted devises of at least four parcels of land under the will, which were not included nor mentioned in his contract, and entered into possession of them and has continued to hold them. Their total value was $1,700. He also has continued in possession of other property given him by the will of a value of over $2,100. The contract between the defendant and his father, the testator, was of such a nature that specific performance of its provisions could have been decreed if the former had sought that remedy and had prevailed on the facts. That contract related to real property and specified personal property, which of course could not have been bought in the general market. *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122, 130. Contracts as to the disposition of one's property after death may be specifi-

cally enforced in equity. *Howe* v. *Watson,* 179 Mass. 30. *Murphy* v. *Murphy,* 217 Mass. 233. If the defendant had undertaken to enforce specific performance of his contract, and had succeeded in proving the contract, he would have deprived the plaintiff entirely of the homestead and of one half of the Highfield pasture, of the Knight pasture and of the stock, farm implements, carts and wagons, which by the will were specifically given to the plaintiff. Thus he would have prevented the operation of the will as to these definite estates and goods. Manifestly it would be contrary to the doctrine of election to endeavor to profit by the will to the extent of its benefits conferred on him and at the same time thwart the working of the will upon most of the property therein given to the plaintiff. A party cannot evade the effect of a principle of substantive law merely by shifting the form of action. It is elementary that equity looks through form to substance. If the effect of enforcing the contract by action for its breach is to prevent the operation of the will as to substantial provisions, then the defendant is as much precluded from enforcing it by that form of action as he would be by suit for specific performance. There is no distinction in essence between the case at bar and the case where a testator by will devises Blackacre, which belongs to A, to B, and devises Whiteacre, of which the testator is seized, to A. Yet it is too well settled for discussion that A cannot claim the devise of Whiteacre without releasing Blackacre to B. The defendant stands on no higher or more secure ground because he had a contract for the conveyance or devise of the homestead and other property than he would have stood if he had owned it in fee. Plainly the testator could not have intended both his will and his contract with the defendant to stand. Their provisions are utterly incompatible. The benefactions given by the will to the plaintiff are repugnant in every particular to the terms of the contract with the defendant.

There is no room for a contention that there was mistake or oversight on the part of the testator. His expression of desire in the will that the defendant live on the farm with the plaintiff and that, if they decided to separate, the defendant should be given a reasonable time within which to remove, demonstrate that the testator had abandoned whatever idea he once may have entertained that the homestead should go to the defendant. The case

as now presented is not one where all provisions of the will must wait on the payment of damages for breach of the contract sought to be enforced by the defendant by his action at law. That is not a mere pecuniary obligation, but an agreement for the transfer of specific property.

The contract and the will cannot both stand according to their express terms. But the defendant as a beneficiary under the will, who has in that respect accepted its provisions, is barred from enforcing his contract to the extent of preventing the operation of the will as to other beneficiaries. The defendant therefore comes within the scope of the doctrine of election. He must either relinquish his own benefits under the will and rely wholly on his contract, or abandon the contract if he chooses to accept the provisions of the will in his behalf. He has made his election. He chose at the outset to take his benefactions under the will and has continued constant in that course. *Hyde* v. *Baldwin,* 17 Pick. 303. *Gorham* v. *Dodge,* 122 Ill. 528. *Towle* v. *Towle,* 79 Wis. 596. *Utermehle* v. *Norment,* 197 U. S. 40. *Central Trust & Safe Deposit Co.* v. *Snider,* [1916] 1 A. C. 266, 274. *Jackson* v. *Bevins,* 74 Conn. 96, 100. *Drake* v. *Wild,* 70 Vt. 52, 57. *Wise* v. *Rhodes,* 84 Penn. St. 402. *Cox* v. *Rogers,* 77 Penn. St. 160. Bigelow on Estoppel, (6th ed.) 733, 734, and cases there collected.

The plaintiff in his capacity as executor might have set up the defence of election by answer in the action at law. *Watson* v. *Watson,* 128 Mass. 152. R. L. c. 173, § 28, as amended by St. 1913, c. 307. But ordinarily the remedy of an independent suit in equity is concurrent. *J. B. Eustis Manuf. Co.* v. *Saco Brick Co.* 198 Mass. 212, 217. There is jurisdiction in equity to enjoin the enforcement of a common law judgment. *Brooks* v. *Twitchell,* 182 Mass. 443.

That equitable defence was not pleaded in the action at law brought by the defendant against the executors of the will of his father. No reference is made to it by name. The paragraphs in that answer, pleading as credits upon the plaintiff's claim the amounts received by him under the will, relate to a defence of a different kind. It was so held in *Noyes* v. *Noyes,* 224 Mass. 125, 134.

Fundamentally, the reason why the plaintiff may proceed at equity by the present suit is that he appears now in his personal

capacity as a devisee and legatee under his father's will, whose individual property rights as such devisee and legatee will be affected by the enforcement of the action against him as executor. In this capacity he does not stand as he would if his rights were alone those of the executor of the will, but he asserts independent rights. *McCarthy* v. *William H. Wood Lumber Co.* 219 Mass. 566, and cases there collected. *Wall* v. *Massachusetts Northeastern Street Railway,* 229 Mass. 506. The conduct of the executor does not bind the plaintiff in his individual capacity in this particular. The failure to plead election as a defence to the action at law on the contract by the defendant does not preclude the plaintiff in his individual capacity from now relying upon that doctrine. In this view of the case the question of accident, mistake or ignorance of the plaintiff in omitting to raise the question of election in the action against him as executor is not material. The denial of the motion for a new trial setting up the principle of election does not bar him. It is not necessary to determine what might be the effect of these factors against the estate of the testator, if it alone were concerned in the present suit. Therefore, cases like *Fuller* v. *Cadwell,* 6 Allen, 503, *Payson* v. *Lamson,* 134 Mass. 593, and *Boston & Maine Railroad* v. *D'Almeida,* 221 Mass. 380, relied upon by the defendant, are not controlling.

A decree is to be entered affirming the interlocutory decree which overruled the demurrer, and enjoining the defendant from further prosecuting his action at law, but without costs.

*So ordered.*