PRISCILLA HARDING *vs.* JAMES A. BAILEY & another, executors.

Midd esex.    March 5, 1940. — May 28, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Contract,* Antenuptial agreement. *Equity Jurisdiction,* Antenuptial agreement.

A child of a testator, for whom provision was made in the will but not in an antenuptial agreement by the testator stipulating that he would not alter nor revoke the provisions for his intended wife in his will, had no standing to question a transfer by the testator during his life of so much of his property that funds remaining were not sufficient to pay the legacies, and he could not recover the amount of his legacy from the transferee.

BILL IN EQUITY, filed in the Superior Court on August 12, 1938.

A decree dismissing the bill was entered after hearing by *Greenhalge,* J. The plaintiff appealed.

*E. P. Carver, Jr.,* for the plaintiff.

*H. W. Hardy,* (*J. A. Bailey* with him,) for the defendants.

DOLAN, J. This is a suit in equity in which the plaintiff seeks to compel the executors of the will of Marion I. Harding, deceased, to pay to her the sum of $10,000 with interest from August 3, 1937.

The plaintiff is the daughter of Theodore Parker Harding, deceased, and Helen Bott Harding, who were married in this Commonwealth on October 4, 1911. On October 2, 1911, they entered into an antenuptial agreement, and on the same day Theodore executed his will, reciting that it was made in contemplation of marriage to Helen Bott.

In the antenuptial agreement reference was made to the will of Theodore and it was recited that its contents had been fully disclosed to Helen. The agreement provided that the testator would not alter, amend or revoke the provisions made for his intended wife, who agreed upon the death of the testator to accept the provisions of the will, in full of all rights "she might or could have or be entitled to but for . . . [the] agreement."

Under the will the testator gave all his household furniture, pictures, books, plate, horses, carriages and harnesses and $1,000 to Helen L. Bott. He made gifts of clothing, jewelry, articles of personal use and office furniture to his brother Walter Howard Harding. To each of his sisters, Annie, Harriet, Marion, and to his brother Walter he gave $500. He left the residue of his estate to his brother Walter and James A. Bailey in trust, to pay out of the principal $10,000 to each child of his when "such child" becomes twenty-five years of age, and to pay and distribute the net income of the trust estate as follows: "to said Helen L. Bott one-third part thereof, and if in any year said one-third part is less than two thousand (2,000) dollars, then in any such year to pay to her such part of the principal sum of said trust property as will make up with said one-third of the income, the sum of two thousand (2,000) dollars; to each of my said sisters and to my said brother one-sixth part thereof, and if in any year the part of the income accruing to each of [*sic*] sisters or my brother is less than one thousand (1,000) dollars, then in any such year to pay to each of my sisters and

my brother such part of the principal sum of said trust property as will make up with the share of income accruing to him or her the sum of one thousand (1,000) dollars. Upon the death of any of said five cestuis que trust the share of income theretofore received by said deceased person shall be equally divided among the survivors of said five and all of the income shall be paid to the last survivor during his or · her life, and upon the death of the last survivor, provided that no child of mine is then under twenty-five years of age, and if any such child is living, in that event when the youngest of my children becomes twenty-five, the whole trust property then remaining shall be paid over as follows, and the trust terminated: to the Symmes Arlington Hospital ten thousand (10,000) dollars to be known as the Helen Bott Harding Fund, to be held in trust and the income thereof to be used for the general purposes of the Hospital. To the Lend-a-Hand Society, founded by Rev. Edward Everett Hale, and having its office in Boston, ten thousand (10,000) dollars, to be known as the Helen Bott Harding Fund, to be held in trust and the income thereof to be used for the general purposes of the Society. All the residue to the Franklin Square House, located in Boston, to be held in trust and the income thereof to be used for its general purposes."

The testator and his wife, who had two children by their marriage, of whom the plaintiff, now over the age of twenty-five years, is one, later separated, and the testator transferred "funds" amounting to approximately $90,000 to his sister Marion I. Harding. The judge found that "if material" there was consideration for this transfer but that "its effect was to deplete the estate of Theodore Parker Harding so that there were not sufficient funds to meet the . . . legacies, including those to the plaintiff [and her brother], at the time of . . . [the testator's] death." The testator died on April 27, 1923, and his will was allowed on May 31, 1923.

On June 25, 1923, the testator's sister Marion, by written instrument to which the testator's widow, the mother of the plaintiff, was a party, assigned and transferred to two trustees certain bonds and stocks having a then value of

$50,000 upon trust to pay the entire income therefrom to
the testator's widow, until Priscilla Harding or Theodore P.
Harding, the children of the testator and Helen B. Harding
his widow, attained the age of twenty-one years.  The
trust instrument provided that whenever either should
attain that age, $500 was to be paid annually out of the
income of the trust estate to each child attaining such age,
and that the balance of the income should be paid to the
testator's widow during her life.  Upon the death of the
latter, and she was living at the time of the trial, the trust
agreement provided that "one-half of the net income from
the trust fund shall thereafter be paid over to each of said
children until he or she reaches the age of twenty-five years,
— or if but one child survives, then the whole income shall
be paid to the surviving child until he or she reaches the
age of 25.  If, upon the death of Helen B. Harding, either
child has already attained the age of 25, — or whenever
thereafter either child shall attain said age, — one-half of
the principal of the trust fund shall be paid to that child,
and if but one of the children attains the age of 25, then the
whole of the principal shall upon the death of Helen B.
Harding, be paid to that child, free and clear of any trust
or trusts.  In the event of both children dying before Helen
B. Harding, then the entire trust fund shall thereupon be
paid over to said Helen B. Harding, free and clear from
any trust or trusts."  This instrument was signed and
sealed by the testator's sister Marion, by his widow, and
by the trustees named therein, who accepted the trust.
The children of the testator, who were then minors, did not
sign the instrument.

. In his "Statement of Findings, Rulings and Order for
Decrees" the judge stated that it did not appear and that
he did not find or rule that Helen B. Harding joined in the
trust instrument as guardian of the plaintiff or purported
to bind her in any way by its terms.  He further stated
that he was unable to accept the contention of the plain-
tiff that the provisions of the antenuptial agreement by
reference extend to and include the provisions of the will
for unborn children so as to give the plaintiff the right to

enforce the provisions of the agreement and to question the legality and good faith of the transfer of her father's property to his sister Marion, the respondents' testatrix, and that he could not conclude, as a matter of fact or law, that the antenuptial agreement confers any rights upon the plaintiff. The evidence discloses that payments of income have been made in accordance with the terms of the trust agreement. See *Noyes* v. *Noyes*, 233 Mass. 55, 59, 61, and cases cited; *Knapp* v. *Meehan*, 287 Mass. 573, 576. In accordance with the order of the judge a final decree was entered dismissing the bill with costs. The plaintiff's appeal brings the case before us.

The plaintiff has cited many cases in other jurisdictions in support of the principle that "Where an antenuptial agreement has been made between a prospective husband and wife, and where provision in said agreement is made with respect to prospective children, and where the marriage later occurs and legitimate children are born, these children have the right to enforce the antenuptial agreement in equity, even although they were not themselves in existence at the time the contract was executed." But if it be assumed that this principle is sound (see Story, Equity Jurisprudence [14th ed.] § 1330, and cases cited), in the present case there is no provision in the antenuptial agreement for "any" of the testator's children. The plaintiff, however, argues that the provisions of the will are incorporated in the antenuptial agreement. But we are of opinion that the only provisions of the will that are incorporated in that agreement are those made by the testator for his intended wife, and that they are so incorporated by virtue of his agreement that he would not alter, amend or revoke the provisions made for her in his will. It was to this extent only that he bound himself to adhere to the terms of his will. He did not bind himself so to do with reference to any other person or object. An estate in the testator's children cannot be read into the antenuptial agreement which makes no reference to them.

Moreover, in the case of *Bailey* v. *Milligan*, 256 Mass. 90, the will of the testator was considered by this court

upon appeal of a guardian *ad litem* appointed to represent
the plaintiff in this case and her brother, both of whom
were then minors. The will of the testator was there con-
strued in the light of the antenuptial agreement. The
facts relating to the execution of the trust agreement were
also before the court. It was there held that, even though
the widow of the testator had entered into that trust agree-
ment instead of enforcing the antenuptial agreement, this
did not operate to deprive her of her right of priority under
the terms of the will as a purchaser for value. In the same
case, notwithstanding the gift made to the testator's sister
Marion, priority over the legacies given to the children of
the testator was accorded to the provisions of the will
made for Marion. At page 94 the court said: "The testa-
tor by reason of the antenuptial agreement was under
obligations to  . . . [his widow] to act in good faith in the
matter of giving away or disposing of his property during
his life. *Eaton* v. *Eaton*, 233 Mass. 351. But he was
under no such obligation to other beneficiaries under his
will, and his widow owed them no duty to institute legal
proceedings to recover the estate for their benefit. What-
ever the reasons which led the parties to make the agree-
ment to place $50,000 in trust may have been, and whatever
may have been the source from which Marion I. Harding
obtained the money which was paid to trustees, that fund
did not become assets of the testator's estate and his widow
did not lose her right to insist on the priority of her legacy
by reason of her antenuptial agreement and relinquishment
of her right of dower. There is nothing in the terms of the
agreement to lead to a different conclusion."

The decree entered in the Probate Court in that case set
up with exactitude the rights of the persons named as bene-
ficiaries under the testator's will, including those of the
plaintiff. While the question there raised was as to priority
of beneficiaries under the will, in determining that issue
the rights of the beneficiaries had to be established. They
were so established in the light of all the facts as to the
antenuptial agreement, the will and the trust agreement by
the decree entered in the Probate Court. The guardian

*ad litem* appointed to represent the plaintiff and her brother was the only appellant from that decree. In argument before this court in that case the guardian *ad litem* conceded that the widow of the testator was the only one who could compel the carrying out of the antenuptial agreement, and the restoration of the gift made by the testator to his sister. The decree appealed from was affirmed by this court. We are of opinion that thereby the rights of the plaintiff in the estate of the testator under the terms of his will were decisively and finally established, and that she is bound thereby.          *Decree affirmed with costs.*