LLOYD B. WARING & another, trustees, *vs.* AUGUSTUS P.
LORING & another, trustees, & others.

Suffolk. November 5, 1986. — March 12, 1987.

Present: WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Devise and Legacy*, Intestacy, Remainder. *Trust*, Distribution.

Language in a will stating, "The provisions of this will for the benefit of
my wife . . . are in lieu of dower and of all her statutory rights in or
to any part of my estate" did not, in the absence of any necessary
implication from the will as a whole that the widow was to be excluded,
bar the surviving widow's estate from receiving a distributive share of
a trust under the will, after partial intestacy resulted from failure of
testamentary provisions for distribution of the remainder. [422-425] WIL-
KINS, J., dissenting.

Language in a will stating, "The provisions of this will for the benefit of
my wife . . . are in lieu of dower and of all her statutory rights in or
to any part of my estate" merely required the widow to give up those
statutory rights which, if exercised, would disrupt the testamentary dispo-
sition described by the will and did not bar, under the doctrine of
equitable election, the surviving widow's estate from receiving a distribu-
tive share of the remainder of a trust under the will, after partial intestacy
resulted from failure of testamentary provisions for distribution of the
remainder. [425-428]

COMPLAINT for instructions filed in the Suffolk Division of
the Probate and Family Court Department on July 2, 1985.

The case was heard by *Mary C. Fitzpatrick*, J., on a statement
of agreed facts and was reported by her to the Appeals Court.
The Supreme Judicial Court granted a request for direct review.

*William F. Kehoe* for Lloyd B. Waring & another, trustees.

*John A. D. Gilmore* (*Jeanne M. Kempthorne* with him) for
Augustus P. Loring, trustee.

*Richard J. Innis* (*Leila R. Kern* with him) for Lloyd B.
Waring, executor.

LYNCH, J. The trustees under the will of Frank E. Peabody
commenced this action on July 2, 1985, by filing a complaint

for instructions in the Probate Court in Suffolk County in which they sought instructions as to the distribution of the remainder of their trust, the testamentary provision for disposition of the trust remainder contained in the will of Frank Peabody having failed.

On August 20, 1985, Lloyd B. Waring, coexecutor of the will of Amelia Peabody[1] (Frank Peabody's daughter), filed an answer praying that the court instruct the trustees under the will of Frank Peabody to distribute the trust remainder to the estate of Amelia Peabody. On September 5, 1985, the trustees under the will of Gertrude Peabody Eaton (Gertrude's trustees) filed an answer praying that the property be distributed to the respective estates of Gertrude Peabody Eaton (Frank Peabody's widow), and Amelia Peabody, in accordance with the applicable Massachusetts intestacy statute.

On January 27, 1986, a judge of the Probate Court reserved and reported the matter without decision to the Appeals Court, pursuant to the provisions of G. L. c. 215, § 13, and Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We granted Gertrude's trustees' application for direct appellate review pursuant to G. L. c. 211A, § 10 (A), and Mass. R. A. P. 11, as amended, 378 Mass. 924 (1979).

The parties have stipulated to the following facts. The testator, Frank Peabody, died on September 28, 1918. He was survived by his wife, Gertrude Peabody,[2] and his daughter, Amelia Peabody. His will, which was executed in 1915, was admitted to probate by the Probate Court for Suffolk County on October 17, 1918. After providing substantial bequests to various individuals and organizations, Frank Peabody left the bulk of his property for the benefit of his wife and daughter. In

---

[1] Because Harry F. Rice serves as a cofiduciary in the estates of Frank Peabody, Gertrude Peabody Eaton and Amelia Peabody, he takes no position in this litigation. The interests of the trustees under the will of Gertrude Peabody Eaton are advanced by Augustus P. Loring. The interests of the executors under the will of Amelia Peabody are advanced by Lloyd B. Waring.

[2] After the death of Frank Peabody, Gertrude Peabody married William Eaton.

accordance with these provisions, Gertrude received certain real and tangible personal property, and a life interest in a trust funded with one half of Frank Peabody's residuary estate.[3] Amelia received the remainder of that trust and other substantial real and personal property, including a life interest in a second trust funded with the other half of the residuary estate. It is the principal of this second trust that is at issue in this proceeding.

On Amelia's death, the trust principal was to be paid to her issue by right of representation. In 1984, however, Amelia died without issue. Frank Peabody's will provided in paragraph seventh that in such case the trustees were to pay several legacies, and then distribute any balance among Frank Peabody's partners at Kidder, Peabody & Company, who were living both at his death and at the date of distribution. As none of Frank Peabody's partners at Kidder, Peabody & Company survived Amelia, and the will contained no further affirmative provision for disposition of the trust remainder, the balance of the trust is not disposed of by Frank Peabody's will.

Under the Massachusetts statute of descent and distribution in effect at Frank Peabody's death,[4] R. L. c. 140, § 3 (1902), Gertrude, as surviving widow, would receive one-third of the intestate property, and Amelia, as sole issue, would receive two thirds.[5]

The executors of Amelia's estate oppose distribution in accordance with this statute, however, on the ground that Gertrude's right to share in intestate property is precluded by paragraph ninth of Frank Peabody's will, which provides in

---

[3] Gertrude Peabody did not elect to waive the will.

[4] The parties have stipulated that the applicable Massachusetts intestacy statute is the statute which was in effect at the time of his death. See *Old Colony Trust Co.* v. *Johnson*, 314 Mass. 703, 711 (1943).

[5] As Gertrude and Amelia have both since died, the property would be distributed through their respective estates. Gertrude died in 1937, leaving the residue of her estate in trust for Amelia's life. The sole surviving remainder beneficiary of the trust established by Gertrude is Harriet B. Long, daughter of Gertrude's brother. Mrs. Long has disclaimed in favor of her issue. Amelia's will leaves the residue of her estate to two charitable foundations.

its entirety as follows. "NINTH: The provisions of this will
for the benefit of my wife, Gertrude Peabody, are in lieu of
dower and of all her statutory rights in or to any part of my
estate."

1. It is clear that a bequest to a surviving spouse alone does
not operate to bar the spouse's right to a distributive share in
intestate property. *Nickerson* v. *Bowly*, 8 Met. 424 (1844).
*Johnson* v. *Goss*, 132 Mass. 274 (1882). See generally
Newhall, Settlement of Estates § 209 (1958).

In *Nickerson* v. *Bowly, supra,* this court considered the
argument in behalf of a widow's estate that the testator's inten-
tion (if any)[6] to exclude his widow from sharing in the intestate
property is irrelevant: "In *Atkins* v. *Kron*, 2 Iredell Eq. Rep.
58, a testator gave to each of his heirs a certain portion of his
property, 'and no more.' Yet it was held that these words did
not exclude the heirs from other portions of his property which
he had not effectually bequeathed to others; for, as to such
portions, they took by law, independent of, and even against,
his intentions." *Id.* at 427. Chief Justice Shaw, writing for the
court, followed this rule. Having found that the testator failed
to devise the property, the court refused to inquire into the
testator's intention as to whether his widow should share in
the intestate property: " [W]e think the true answer is, that the
intention of the testator is to govern, so far only as he has
communicated that intention, *by his will*, either in terms or by
implication; but if he has left undevised property, the disposi-
tion of it is not governed by his will, but by another rule having
its origin in another source, in the application of which the
intent of the testator is not the governing rule, and can have
no influence" (emphasis in original). *Id.* at 432.

Where the testator has made no bequest to a particular ben-
eficiary, or limited a bequest to so much "and no more," the
same result has been reached. See, e.g., *Frye* v. *Saunders*,
248 Mass. 285 (1924) (excluded "relations" allowed to share
in intestate property where will provided: "I give and devise
nothing whatever to my father's first wife's relations and

---

[6] The will in *Nickerson* did not contain any words of express disinheritance.

nothing to my mother's relations; and hope that my wish as here in expressed will be clearly understood"); *Loring* v. *Dexter*, 256 Mass. 273, 280 (1926) ("The provision of the will excluding certain persons named from taking under it as heirs by blood cannot be given effect in determining the persons who take this intestate property"). As recently as 1971, in *Bray* v. *Bray*, 359 Mass. 439 (1971), this court found Chief Justice Shaw's opinion in *Nickerson* controlling. *Id.* at 441. Accordingly, the testatrix's sister took her share of the intestate property even though the will provided: "I purposely make no gift by this will . . . to my sister . . . ." *Id.* at 440.

There can be no question that, at the time of the testator's death, words of disinheritance alone were not enough to preclude heirs from taking a share of a partial intestacy. Unless the testator effectively disposed of the estate by devise or necessary implication, it was well understood in 1918 that the heir would take even against the testator's clearly expressed intention. See generally 2 J. Woerner, American Law of Administration § 418 (1889); T. Atkinson, Wills 97 (1937).

However, the law has allowed at least two methods by which a spouse may be excluded from intestate property: (1) a devise to another by implication and (2) the doctrine of equitable election. See generally Sayre, Husband and Wife as Statutory Heirs, 42 Harv. L. Rev. 330 (1928). As Amelia's executors argue their application to the present case, we consider them in turn.

In the last century courts have decided that a testator may indicate on the whole will by implication an intent that a particular person should share in an estate. *Metcalf* v. *First Parish*, 128 Mass. 370 (1880), sets forth the general test to be applied to implied dispositions: "[I]f a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared." *Id.* at 374.

Gertrude's cotrustee and Amelia's coexecutor rely, respec-
tively, on *Nickerson* v. *Bowly*, 8 Met. 424 (1844), and *Bragg*
v. *Litchfield*, 212 Mass. 148 (1912), as the primary support
for their positions.

*Nickerson* v. *Bowly* stands for the proposition that a widow,
though provided for by the will of her husband, is not barred
from her statutory interest in any property which may be undis-
posed of by the will, unless the will clearly indicated by neces-
sary implication a devise of property to another to the exclusion
of the widow. In *Nickerson*, where no express exclusion was
involved, the testator gave his widow a life estate in all his
property, but made no disposition of the remainder. The court
declined to infer from the gift of the life estate that the testator
intended that the widow not take a share of the property not
disposed of by the will. The court stated that the testator's
intent was to govern "so far only as he has communicated that
intention, *by his will*, either in terms or by implication" (em-
phasis in original). *Id.* at 432. Since it could not be inferred
by the terms of the will that the testator intended to devise the
property to another to the exclusion of the widow, she was
allowed to share in the intestate distribution.

In *Bragg, supra* at 152-153, upon which Amelia's executors
primarily rely, there was found a sufficient expression in the
will to exclude the widow by implication. The *Bragg* case
involved a testamentary disposition to a widow of a life interest
in the "rest and residue" of her husband's estate, and provided
that, on her death, the remainder would pass by various
pecuniary legacies. The court concluded that since "it appears
from the will taken as a whole that the testator intended the
provision which he made for his widow to be a full and final
provision for her," the residue passed by intestacy to the other
heirs at law. *Bragg, supra* at 152. Without citing or distinguish-
ing *Nickerson*, the court held that the widow's estate was not
entitled to share in the intestate property.

We think that the fact that the testator in *Bragg* had made
no gift of the remainder to his widow by implication should
not have barred her from taking as an heir at law. It is difficult
to conceive how there can be both a devise by implication and

a partial intestacy. However, we conclude that neither case is controlling as neither involves an election clause such as paragraph ninth of the Peabody will.

2. The doctrine of equitable election has been recognized as a method by which a widow may be excluded from intestate property in some instances. See Sayre, 42 Harv. L. Rev. at 337-344. At the time of the testator's death a majority of jurisdictions held that, where a widow elected to accept a provision made for her in a will which expressly declared that the provision was in lieu of dower, the widow was not barred from her share of intestate personalty. See *Johnson* v. *Goss*, 132 Mass. 274 (1882); Note, Ann. Cases 1918B 986, 988. However, unlike *Johnson* v. *Goss*, paragraph ninth of the Peabody will is not limited to dower alone. It therefore presents the question specifically reserved in *Johnson* v. *Goss*, "whether, if a legacy be given to a widow in satisfaction of all her claims on the testator's estate, her acceptance of it precludes her from claiming a distributive share in personal estate which the testator made no attempt to dispose of by his will, or which he has not lawfully disposed of by will." *Id.* at 276.

The doctrine of equitable election is based on the premise that by accepting a bequest under a will the beneficiary confirms the will and therefore should not be permitted to assert any right inconsistent with the will and thereby defeat it. *Ness* v. *Lunde*, 394 Ill. 286, 294 (1946). Amelia's executors rely in part on *Noyes* v. *Noyes*, 233 Mass. 55 (1919), in arguing that paragraph ninth required Gertrude to elect between the provisions contained in the will and her rights as heir or distributee in property not disposed of by the will. *Noyes, supra,* states that no one shall "take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat, or in any way prevent the full effect and operation of every part of the will." *Id.* at 58-59, quoting *Hyde* v. *Baldwin*, 17 Pick. 303, 308 (1835). Amelia's executors argue that to allow Gertrude's estate now to share in the trust remainder would defeat the "full effect and operation" of paragraph ninth of Peabody's will.

We do not feel compelled to regard those statutory rights that are referred to in paragraph ninth of the will as including the widow's share in case of an intestacy arising from a failed disposition. Intestacy rights in the Commonwealth are statutory rights. However, in the context of paragraph ninth, considering what the testator must have had in mind by reason of that language, we decline to read the term "statutory rights" as including intestate rights.

The statutory provisions made for the widow *qua* widow, e.g., dower under R. L. c. 132, § 1 (1902), the forced share of the estate guaranteed by R. L. c. 135, § 16 (1902), and the widow's allowance authorized by R. L. c. 140, § 2 (1902), are distinguishable from intestate rights. The other statutes require a positive act of election on behalf of the widow, unlike the rights derived under the intestate statute. These elective rights are distinguishable from intestate rights since assertion of elective rights is necessarily inconsistent with testamentary dispositions provided for by will. We view paragraph ninth as merely requiring the widow to give up her statutory rights which, if exercised, would disrupt the testamentary disposition described by the testator's will. Therefore, to allow Gertrude's estate to share in the trust remainder would not defeat any provision of Frank Peabody's will. See *Ness* v. *Lunde, supra* at 287, 295 (holding that doctrine of equitable election did not apply to intestate property where will provided devise to widow "[i]n lieu of dower, homestead, widow's award and of any and all rights or interest she might have or claim in my estate").

Our conclusion is in accord with the English decisions at the time of the testator's death, which recognized the need to protect testamentary dispositions as the basis for allowing one spouse to limit the other's rights to property passing by intestacy. The English rule was that where intestacy resulted from a failed disposition in the will the widow need not elect between the testamentary provision and her distributive share in the intestate property. See *Pickering* v. *Stamford*, 3 Vesey 492 (1797). See generally Annot., 93 A.L.R. 1384, 1387 (1934). According to the English decisions, where a will purporting to make a full disposition of the testator's property nonetheless

fails, resulting in an intestacy, an election clause is meant to run merely in favor of other beneficiaries named in the will. *Lett* v. *Randall*, 3 Smale & Giffard 83, 90 n.(a) (1855).

The relationship between a decedent's testamentary disposition and an election provision was also recognized in *Naismith* v. *Boyes*, 1899 A.C. 495, where the provision for the widow was made "in full of all that my said wife can claim in name of terce [one third of income of the husband's heritage], jus relictae [one third of corpus of the husband's moveables], or otherwise." *Id.* at 496. The House of Lords held that the widow was entitled, in addition to such provision, to share in property which, because of a failed bequest, had become intestate. The Lord Chancellor was of the opinion that the intent of such a clause was to enable "full effect" to be given to the testamentary disposition outlined in the will by requiring the widow to give up her legal rights to claims which, if exercised, would have the effect of withdrawing something from the estate otherwise disposed of. Lord Watson said:

> "In a case like the present, where the testator settled upon the members of his family all the property, both heritable and movable, of which he was possessed, I do not think it can be reasonably assumed, in the absence of any provision to that effect either express or implied, that he intended to regulate the disposal of any part of his estate which might possibly lapse into intestacy. In my opinion the testator, when he inserted a clause in his settlement barring the legal rights of the appellant and respondent, had no object in view except to protect the settlement, by preventing the enforcement of these claims to the disturbance of his will and to the detriment of the beneficiaries whom he had selected. When accordingly, by the premature decease of his children of the second marriage, the residue provided to them by his settlement became intestate, I do not think it can be held that the testator contemplated, or intended, that the exclusion of the legal rights of his widow and surviving child should any longer remain operative." *Id.* at 501.

We recognize that our decision weighs in against the majority rule laid down by the few American courts that have considered the issue. See, e.g., *Chamberlain* v. *Chamberlain*, 43 N.Y. 424 (1871); *In re Benson* 96 N.Y. 499 (1884). *In re Hills*, 264 N.Y. 349 (1934). See generally Note, Ann. Cases 1918B at 989; Annot., 93 A.L.R. 1384 (1934). However, on the facts before us, we agree with the results reached in the English decisions, at least in cases of partial intestacy resulting from failed dispositions. In such instances we think preventing a spouse's participation in the intestate distribution serves no purpose and we consider allowing the testator's spouse to share in the intestate distribution to be more consistent with the testator's intent as expressed in paragraph ninth.

Because we decline to read the terms of paragraph ninth as including intestate rights, we remand the case with instructions that Gertrude's estate is entitled to share in the property undisposed of by the will of Frank Peabody, in accordance with the statute of descent and distribution in effect at the time of the testator's death, R. L. c. 140, § 3 (1902).

*So ordered.*

WILKINS, J. (dissenting). This court has recognized that a person who is an heir of a testator is not barred from sharing in any intestate distribution simply because that person was a life beneficiary of certain property under a will. See *Langlois* v. *Langlois*, 326 Mass. 85, 89 (1950), and cases cited, including *Nickerson* v. *Bowly*, 8 Met. 424, 431-432 (1844). We have also recognized, however, that, although there is a partial intestacy under a will, provisions in the will may properly influence who the recipients of intestate property will be. See *National Shawmut Bank* v. *Zink*, 347 Mass. 194, 196 (1964); *Langlois* v. *Langlois, supra; Old Colony Trust Co.* v. *Johnson*, 314 Mass. 703, 711-712 (1943) (husband with a life interest takes a share in intestate property "in the absence, as here, of anything in the will to evidence clearly an intention to exclude him from any further interest in the estate of the testatrix"); *Bragg* v. *Litchfield*, 212 Mass. 148, 152-153 (1912).

In *Bragg* v. *Litchfield, supra*, the widow of the testator was excluded from sharing as an intestate taker in property not disposed of by her husband's will. The court decided that the testator's detailed testamentary provisions for his wife created "[t]he unavoidable inference . . . that he did not intend that she should have any part of the principal of the estate except" tangible personal property specifically given to her. *Id.* at 152-153. The testator gave his wife all his tangible personal property of certain kinds; he directed that she have the income from the residue of his estate, with the power to sell and reinvest; and provided (but incompletely) for the disposition of the residue of his estate. The court recognized in the *Bragg* case (see *id.* at 152) the general principle of *Nickerson* v. *Bowly, supra*, but found it to be inapplicable.

The case now before the court has many similarities to the *Bragg* case but, unlike the *Bragg* case, the will we deal with here has explicit language limiting the widow's rights. Frank E. Peabody gave his wife outright their home and household contents. After numerous specific legacies, Peabody divided his residuary estate into two equal shares. One share went to his wife for life and, as circumstances developed, to his daughter Amelia outright. The other share, the one involved here, went to Amelia for life, then to her issue (there was none), and then, after certain specific legacies, to Peabody's surviving business partners if living at the distribution date (none made it). There is no suggestion that upon an intestacy or lapse of any gift Peabody's widow or her estate should take. At the death of his daughter, he turned to his surviving business partners as supposed takers of last resort of this trust share rather than to his wife or her heirs. One might be tempted on these facts alone to find an "unavoidable inference" (*Bragg* v. *Litchfield, supra* at 152) that Peabody did not intend his widow to take other than what the will explicitly gave her.[1]

---

[1] The court's solution to the obstacle of the *Bragg* case is impliedly to overrule it and then also to distinguish it. The reason it gives for overruling the *Bragg* case highlights the court's conceptual error. It is not, as the court says, "difficult to conceive how there can be both a devise by implication and a partial intestacy." *Ante* at 424-425. Although certain property may not be

One need not rely solely on the pattern shown by the dispositive provisions of the will to conclude that Mrs. Peabody and her estate should have no share of the property not effectively disposed of by Peabody's will. Paragraph ninth of the will says that "[t]he provisions of this will for the benefit of my wife, Gertrude Peabody, are in lieu of dower and of all her statutory rights in or to any part of my estate." The right of Mrs. Peabody to take an intestate share of her husband's estate is a statutory right. We should give effect to the language as written. There is no reason to strain to read some limitation into it. It seems most reasonable to give effect to the provisions of the will so far as possible even when resorting to the statute governing intestate distribution. The suggestion that, once there is an intestacy, the will must be ignored is without logical support and is contrary to our cases, before today.

The remainder of the trust share held for the life of Amelia Peabody should be given in its entirety to Amelia's estate.

---

disposed of by a will and a partial intestacy thus results, one can readily conceive that a testator may nevertheless declare, expressly or impliedly, that a person is not to take any more of his property than the will gives her. The testator did so impliedly in the *Bragg* case. He did so expressly in this one.